---

GAY *et al.*, *Appellants*, v. GILLILAN *et al.*

1. **Will**: UNDUE INFLUENCE : INSTRUCTION. Upon an issue of *devisavit vel non*, where it is claimed that the will was made under undue influence exercised over the mind of the testator by his son, an instruction is improper which declares that, "in order to set aside the will on the ground of undue influence, it must be shown that the circumstances of its execution are inconsistent with any other hypothesis than such undue influence, which cannot be

Gay v. Gillilan.

presumed, but must be shown in connection with the will, and it devolves on those contesting the will to show such undue influence by a preponderance of the testimony."

2. ———— : ———— : SHIFTING BURDEN OF PROOF. Where undue influence in obtaining the execution of a will is once proved to exist; whenever the mind of one person is reduced to a state of vassalage to that of another, and a gift is shown to have been made by the weaker party to the stronger, then the burden of proof will be shifted, the gift will become presumptively void, and the *onus* of upholding its fairness and validity will rest upon the recipient of the gift.

3. ———— : GROSS INEQUALITY IN DISPOSITION OF PROPERTY. Where the testator, without apparent cause, virtually disinherits four out of six children or their descendants, giving to two sons substantially all his property, such gross inequality in the disposition of his estate will place on the proponents of the will the *onus* of establishing its validity.

*Appeal from Daviess Circuit Court.*—HON. C. H. S. GOODMAN, Judge.

REVERSED.

*H. C. McDougal* for appellants.

(1) The court erred in admitting parol evidence of the contents of former wills. *Rankin v. Rankin*, 61 Mo. 295. (2) The court below erred in giving defendants' instructions and particularly the first, which attempts to define sufficient mental capacity and what it takes to constitute undue influence, and by what proof these should be established. *Harvey v. Sullens*, 46 Mo. 147. When Gillilan's influence was shown in connection with the fact that he got the bulk of the estate, then the burden of proof shifted and it devolved upon him to show affirmatively the circumstances connected with the drawing of the will, that his father was under no misapprehension, and that the bequests and devises to him were the free and intelligent act of the father. *Wilson's Appeal*, 99 Pa. St. 545; *Harvey v. Sullens, supra;*

*Riddle v. Johnson's Ex'r*, 23 Gratt. 152; *Evans v. Arnold*, 52 Ga. 169. (3) The inspection by the jury of the signature to the will during the closing argument for defendants, and the comments of counsel upon the character and peculiarities of said signature, as tending to prove that the testator was of sound mind, and sober, and not under undue influence when it was executed, was error. *Sheaff v. Gray*, 2 Yeag. 273; *Jennings v. Warne*, Lea's Rep. 116; *Watson v. Walker*, 3 Fost. 471; *Flanders v. Davis*, 19 N. H. 139; *Whitney v. Whitman*, 5 Mass. 405; *Walker v. Hunter*, 17 Ga. 364; *Railroad v. Butler*, 57 Pa. St. 335; *Hodge v. Bennington*, 43 Vt. 450. As it cannot be told what weight the jury gave to the illegal evidence, the case must be reversed. *State v. McCannon*, 51 Mo. 160; *Golson v. Ebert*, 52 Mo. 260; *Sheffill v. VanDusen*, 81 Mass. 485. The introduction of the signature to the will and the comments thereon in the closing argument of defendants' counsel, was such an abuse of the privileges of counsel as to demand the interference of this court. *Brown v. Swineford*, 44 Wis. 282; *Tucker v. Henniker*, 41 N. H. 317; *State v. Smith*, 75 N. C. 306; *Ferguson v. Smith*, 49 Ind. 33; *Hennies v. Vogel*, 66 Ill. 401.

*Prosser Ray* also for appellants.

The first instruction given for defendants is erroneous. (1) It, in effect, requires contestants to show the existence of undue influence beyond a reasonable doubt, and, therefore, exacts a degree of strict proof not demanded in a civil suit. *Better v. Saathoff*, 98 Ill. 269; *Crabtree v. Reed*, 50 Ill. 206; *McDud v. McDud*, 67 Ill. 550; *Ruff v. Jarrett*, 94 Ill. 476; *Stratton v. Railroad*, 95 Ill. 26; *Clark v. Kitchen*, 52 Mo. 316; *Firman v. Smith*, 7 Lans. 443. (2) It improperly defines undue influence and lays unauthorized stress on the words force and coercion. *Boyd v. Boyd*, 66 Pa. St. 293; 1 Redf.

on Wills, 528; *Hall v. Hall*, 1 P. & M. 481; *Darley v. Darley*, 3 Brad. 508. (3) It confines the inquiry to the circumstances of the execution of the will in question. *Taylor v. Wilbrun*, 20 Mo. 307; *Boyse v. Rossborough*, 6 H. & L. 51; *Davis v. Calvert*, 5 G. & J. [Md.] 302. (4) Upon the issue of mental capacity, and in respect to those affected by the will, it limits the knowledge of the testator to those provided for therein, whereas it should have also embraced similar knowledge as to those thereby excluded from substantial participation in the property. Williams Ex. [6 Am. Ed.] 57; 3 Moore P. C. C. 290; *Forman v. Smith*, 7 Lans. 443; *Reynolds v. Root*, 62 Barb. 250; *St. Leger's Appeal*, 34 Conn. 434; *Beaubien v. Cicotte*, 12 Mich. 460; *Davis v. Calvin*, 5 Gill & Johns. [Md.] 300; *Kinne v. Johnson*, 60 Barb. 69. (5) Under the facts and circumstances of the case, it improperly put the burden of proof upon the contestants as to the issue of undue influence. *Cadwallader v. West*, 48 Mo. 483; 2 Pomeroy's Eq., sec. 591; *Long v. Mulford*, 17 Ohio St. 484; *Woods v. Downs*, 18 Ves. 119; 1 Redf. on Wills, 510, 514; *Lynch v. Clements*, 24 N. J. 431; 2 Lead. Cases in Eq., pt. 2, pp. 1275–76; *Hanel v. Hanel*, 1 Duvall [Ky.] 203; *Bates v. Bates*, 27 Ia. 116; *Higgins v. Carter*, 28 Md. 115. Where a son is so placed by events and circumstances that he may reasonably be supposed to have a controlling influence with the testator, is it unreasonable to require him to show, if the will is made in his favor, and inequitable and unjust to others, according to the common instincts of mankind, that he did not prompt or bring about such a result, which, in normal and natural testamentary disposition, would not have occurred? In such cases it is not necessary to prove in the first instance the actual exercise of overpowering influence *aliunde* the will with its bounty in his favor. *Highberger v. Stifler*, 21 Md. 339; *Sears v. Shafler*, 2 Seld. 268; *Marvin v. Marvin*, 3 Ab. Ap. [N. Y.] 193; *Kinne v. Johnson*, 60 Barb. 69; *Moore*

---

Gay v. Gillilan.

---

*v. Blauvet*, 2 McCarty, 367 ; *Long v. Musferd*, 17 O. S. 484 ; *Boyd v. Boyd*, 66 Pa. St. 293 ; *Kennedy v. Kennedy*, 2 Ala. 571 ; *Conant, Adm'r, v. Jack*, 16 Ver. 336.

*Rush & Alexander* for respondents.

(1)   The court did not err in allowing proof of contents of former wills.   *Miller v. St. Louis*, 73 Mo. 242 ; *Thornton v. Thornton*, 39 Vt. 122 ; 1 Jarman on Wills [5 Am. Ed.] 139 ; *Hurris v. Hays*, 53 Mo. 95 ; *Thomas v. Stump*, 62 Mo. 275 ; *Wooten v. Redd*, 12 Grattan, 196 ; *Williamson v. Nabers*, 14 Ga. 286 ; 1 Redfield on Wills [2 Ed.] 536–7-51, 54, 55 ; *Hughes v. Hughes*, 31 Ala. 319 ; *Means v. Means*, 5 Strobh. 167 ; *Love v. Johnston*, 12 Iredell, 355 ; *Dye v. Young*, 55 Iowa, 433 ; *Couch v. Couch*, 42 Am. Dec. 602.   (2) The first instruction given for defendants was proper.   1 Redfield on Law of Wills [2 Ed.] 509 to 536 ; *Williams v. Gonde*, 1 Hagg. 577 ; *Gardner v. Gardner*, 34 N. Y. 155 ; *Gaither v. Gaither*, 20 Ga. 709 ; *Children's Aid Soc. v. Loveridge*, 70 N. Y. 387 ; *Brick v. Brick*, 66 N. Y. 144 ; *Eckert v. Flowry*, 43 Pa. St. 46 ; *McIntire v. McConn*, 28 Iowa, 480 ; *Barnes v. Barnes*, 66 Me. 286 ; *Turner v. Cheeseman*, 2 McCart. 243 ; *Taylor v. Kelly*, 31 Ala. 59 ; *McDaniel v. Crosby*, 19 Ark. 533 ; *Sutton v. Sutton*, 5 Harr. [Del.] 459 ; *Whitman v. Stoddard*, 3 Bradf. 393 ; *Roe v. Taylor*, 45 Ill. 485 ; *Rutherford v. Morriss*, 77 Ill. 397 ; *Higgins v. Carlton*, 28 Md. 115 ; *Robb v. Taylor*, 43 Ind. 1.   "In order to set aside the will of a person of sound mind it is not enough to show that the circumstances attending the execution are consistent with the hypothesis of its having been obtained by undue influence.   It must be shown that they are inconsistent with a contrary hypothesis."   *Whepley v. Loder*, 1 Demorest [N. Y.] 368 ; 1 U. S. Dig. 1883, p. 857, c. 5 ; *Tyler v. Gardiner*, 35 N. Y. 610 and cases cited.   The burden of proving undue influence in this case was properly declared by the court to be upon the plaintiffs.   *Gardner*

v. *Gardner*, 34 N. Y. 163; *Glover v. Hayden*, 4 Cush.
580; *Taylor v. Wilburn*, 20 Mo. 306; *Ewen v. Perrin*,
5 Redf. [N. Y.] 640; *Tyler v. Tyler*, 35 N. Y. 559; *Ball
v. Parker*, 99 Mass. 79; *Webber v. Sullivan*, 58 Iowa,
160; *Davis v. Davis*, 123 Mass. 590; Jarman on Wills
[5 Am. Ed.] 133-136-142; *Rankin v. Rankin*, 61 Mo.
295. (3) When the will was read in evidence to the
jury, it became a part of the record and any legitimate
argument that might be drawn from it was entirely
proper. In this case the will was the subject of con-
troversy, and every provision in it was subject to
scrutiny and comment. It would be difficult for counsel
to determine what his privileges are in the argument of
a case if the use made of the will in this instance was
improper. It is just as competent for counsel to com-
ment on the appearance of the will, as to comment on
the appearance of a witness on the stand, and his
manner of testifying. If the remarks of counsel were
unwarranted by the evidence, and misleading, the court
say, in the case of *Roeder v. Studd*, 12 Mo. App. 566,
it is the duty of the trial court to reprimand him in
the presence of the jury. They further say that the
question of misconduct of counsel cannot be saved for
review in an appellate court by affidavits accompany-
ing the motion for a new trial. To same effect, see
*Blackman v. Cowan*, 11 Mo. App. 588; *State v. Banks*,
10 Mo. App. 115. This court has ever been slow to in-
terfere with verdicts, even when counsel have gone out-
side the record in their closing speeches. *State v. Lee*,
66 Mo. 165; *Lloyd v. Railroad*, 53 Mo. 515. (4) It
would not have been error for the court to have per-
mitted the jury to take the will with them to their room.
*Hauger v. Imboden*, 12 Mo. 88; *Cornelius v. Grant*,
8 Mo. 60.

SHERWOOD, J.—This suit is a statutory proceeding
to determine whether the instrument executed January

13, 1882, was the last will of Nathan Gillilan, deceased. He died December 17, 1882. Plaintiffs claim that it was made under undue influence, obtained and exercised by his son George, one of the defendants, and the principal beneficiary, by threats of taking his father's life. Other grounds were alleged in the petition, that the testator was not possessed of sufficient testamentary capacity to make a will, and was intoxicated when he signed the instrument in question. The testimony exhibits a considerable degree of conflict as to whether the testator was intoxicated when the will was made; as to the condition of his mind at that time, and as to whether there was undue influence exerted in securing the execution of the will.

Objections are taken to the first instruction given on behalf of the proponents of the will; it is as follows:

"The jury are instructed that the only issue in this case is whether or not the instrument in writing, offered in evidence, is the last will and testament of Nathan Gillilan, deceased. And if they find, from the evidence, that he signed in the manner testified by the subscribing witnesses, and at the time of such signing he had sufficient understanding to comprehend the transaction, the nature and extent of his property, and to whom he was giving the same, the jury should find that he had sufficient mental capacity to make a will, notwithstanding he was, from the use of intoxicating liquors, or otherwise, weaker in body and mind than during his more vigorous manhood. And if the jury find that his understanding was thus sufficient, they should find that such instrument was, and is, the last will and testament of Nathan Gillilan, unless they further find that the making and signing thereof was procured by an undue influence which amounted to a moral force or coercion, destroying free agency, and substituting the will of George W. Gillilan for that of his father, and there must be proof that it was obtained by force or coercion, and

Gay v. Gillilan.

in order to set aside the will of a person of the sufficient mental capacity aforesaid, on the ground of undue influence, it must be shown that the circumstances of its execution are inconsistent with any other hypothesis than such undue influence, which cannot be presumed, but must be shown in connection with the will, and it devolves upon those contesting the will to show such undue influence by a preponderance of the testimony."

This instruction is manifestly erroneous in that portion of it which declares that, "in order to set aside the will, on the ground of undue influence, it must be shown that the circumstances of its execution are *inconsistent with any other hypothesis* than such undue influence, which cannot be presumed, but must be shown in connection with the will, and it devolves upon those contesting the will to show such undue influence by a preponderance of the testimony. In civil cases, "it is not necessary that the minds of the jurors be freed from all doubt; it is their duty to decide in favor of the party on whose side the weight of the evidence preponderates, and according to the reasonable probability of truth." In such cases, "it is sufficient, if the evidence on the whole agrees with and supports the hypothesis which it is adduced to prove; but in *criminal* cases, it must exclude every other hypothesis but that of the guilt of the party." 1 Greenl. Evid. [14 Ed.] sec. 13*a;* 3 Greenl. Evid., sec. 29. It will be observed that the portion of the instruction now being criticised lays down a rule as stringent in its operation in *civil* cases as the one which prevails in *criminal* cases. Indeed, it may be said that the rule laid down in this instance is more stringent than the one obtaining in criminal cases; for, in the latter class of cases, it is usual to use the qualifying word, *reasonable*, in connection with the word hypothesis. Wills' Circ. Evid., 149 ; *Commonwealth v. Costley*, 118 Mass. 1.

Here it will be noted that in order to defeat the will of Nathan Gillilan, on the ground of undue influence, the instruction in question requires the contestants to show that the circumstances of the execution of the will are inconsistent with any other hypothesis than such undue influence, whether such hypothesis was a fanciful or a reasonable one. Even if the qualifying word, "reasonable," had been used in the instruction, it would have been unwarranted under the authorities cited. Elsewhere, it has been determined that in a civil case an instruction is erroneous which required a party to establish his claim "*by a clear preponderance of the evidence.*" *Bitter v. Saathoff*, 98 Ill. 266. In this court, an instruction was condemned by intimation, no direct ruling being necessary, which made it a condition precedent to plaintiffs' recovery that they show, by *clear and certain proof*, that defendant did maliciously kill," etc. *Culbertson v. Hill*, 87 Mo. 553. In *Nichols v. Winfrey*, 79 Mo. 544, an action for the wrongful and malicious killing of the plaintiff's former husband, it was laid down that it was not necessary to a recovery of damages, that the defendant's guilt should be established beyond a reasonable doubt, but that it was sufficient for the plaintiff to make out her case in accordance with the rule prevalent in other civil cases. And, Greenleaf, though in earlier editions asserting a different doctrine, yet, in the last edition, it is admitted, in a note, that the doctrine of the text is not well supported. 2 Greenl. Evid. [14 Ed.] sec. 426, and cas. cit. ; 1 Greenl. Evid., sec. 13a.

And I do not consider that the vice of the words commented on was neutralized by the remaining words of the instruction ; for the jury, notwithstanding those remaining words, must have been impressed with the erroneous idea already conveyed to their minds by the former objectionable words. It is a fact deserving of much consideration that no case has been instanced

by counsel where an instruction, requiring that those who attack the validity of a will, on the ground of undue influence, should show that the circumstances of its execution are inconsistent with any other hypothesis than such undue influence, has received the sanction of an appellate court. It is true that the original of the idea conveyed by the words under discussion is thought to be found in the remarks of Lord Chancellor Cranworth, in *Boyse v. Rossborough*, 6 H. L. Cas., *loc. cit.* 51. But such observations, however appropriate when and where made, should not be used as the basis for an instruction to a jury trying an issue *devisavit vel non*. The remarks of the Lord Chancellor were: "But in order to set aside the will of a person of sound mind, it is not sufficient to show that the circumstances attending its execution are consistent with the hypothesis of its having been obtained by undue influence. It must be shown that they are inconsistent with a contrary hypothesis." I take it that these words do not go so far, as at first blush, they might seem to do. I think that the meaning they were intended to convey was simply this : that the burden of proof being on those who attack a will on the ground of undue influence, it is not sufficient for them barely to show that the circumstances of the will are consistent with the hypothesis of undue influence ; for this would be but to create an *equipoise* in the testimony, and the *onus* being on the party attacking the will, he must go a step further and show by any suitable evidence an inconsistency between the circumstances of the execution of the will, and of its being executed without the interposition of undue influence. This is all, when rightly understood, I believe the remarks of the Lord Chancellor to mean. In other words, the evidence on the part of a party attacking, on the ground of undue influence, the will of a person of sound mind, must preponderate over the evidence adduced, and the

presumptions prevailing, on behalf of the proponents of the will.

Briefly told, the testimony of disinterested witnesses, as to the exercise of undue influence by George over his father, is this : Nathan, the father, at the time of the execution of the will in question, was nearly eighty years of age. Originally of a vigorous mind and body, years of excessive indulgence in strong drink, as well as advanced age, had greatly impaired his former mental and physical vigor. His son, George, had acquired dominion over him, as the following testimony shows. He frequently annulled "trades" his father had made. He caused his aged father great distress of mind by circulating reports that his father had debauched his wife. This he admitted when on the witness stand, merely denying that he had ever accused his father of that crime *to his face*. He also admitted that he had told others that he would charge his father with that crime in his petition for divorce from his wife.

On the very morning of the day the will was made, George had a quarrel with his father, called him a liar, cursed him, seized a chair and threatened to mash him through the floor. When this occurred, his father fled through the door, crying out, "don't let him hurt me." Thereupon, Jas. Clendenin, a grandson of the testator, was called to come in from the barn, and he did so, and rebuked his uncle for his brutal conduct. This was the testimony of Massingill, a tenant on the testator's farm, who also testified that George quarrelled with his father whenever George came to his father's house, and his father seemed afraid of him. Massingill, also, testified that, on the occasion referred to, before George picked up the chair to strike his father, the latter had threatened to disinherit him, and reminded him of the falsehoods he had told about him respecting his wife. The testimony of Massingill is substantially corroborated by Mrs. Massingill, his wife. These witnesses are entirely

disinterested and they stand unimpeached.   Their testimony is also supported by that of another disinterested witness, the divorced wife of George, plainly showing the dread with which George had inspired his father, and the fear the latter had, should he change his will, of being killed by his son.   There is abundant evidence of the same sort throughout this record, but I have chosen to mention first that of impartial witnesses.

No one can read this record without being painfully impressed with the idea that George, by his most unfilial conduct and threats, had placed the mind of his aged and infirm father in complete subjection to his demands.   And it can make no difference how such undue influence was acquired over the mind of a father, already enfeebled by advancing years and the infirmities incident to long-continued habits of excessive dissipation ; whether by slanders or threats, or by a combination of these unwarranted means.   My ideas on this point I find very aptly and forcibly expressed in the charge of Sir J. P. Wilde, in *Hall v. Hall,* 1 Prob. & Div. Law Rep. 481, where, in summing up, he gave the following direction to the jury on the question of undue influence : "To make a good will a man must be a free agent. But all influences are not unlawful.   Persuasion, appeals to the affections, of ties of kindred, to a sentiment of gratitude for past services, or pity for future destitution, or the like, these are all legitimate, and may be fairly pressed on a testator.   On the other hand, pressure of whatever character, whether acting on the fears or the hopes, if so exerted as to overpower the volition without convincing the judgment, is a species of restraint under which no valid will can be made.   Importunity or threats, such as the testator has not the courage to resist, moral command asserted and yielded to for the sake of peace and quiet, or of escaping from distress of mind or social discomfort, these, if carried to a degree in which the free play of the testator's judgment, dis-

cretion, or wishes, is overborne, will constitute undue influence, though no force is either used or threatened. In a word, a testator may be led, but not driven ; and his will must be the offspring of his own volition, and not the record of some one else's."

And, where undue influence is once proved to exist, by whatsoever means produced or acquired, whenever the mind of one person is reduced to a state of vassalage to that of another, and a gift is shown to have been made. by the weaker party to the stronger, then the burden of proof will be shifted ; the gift will become presumptively void, and the *onus* of upholding its fairness and validity will rest upon the shoulders of the recipient of the gift. This rule is firmly established in regard to gifts made by deed, and the same principle holds in regard to wills, and so this court has declared. *Garvin's Adm'r v. Williams*, 44 Mo. 465 ; *Harvey v. Sullens*, 46 Mo. 147.

And though it is said that a court of equity will not set aside a will obtained by fraud, though no satisfactory reason has ever been given why it should not do so, yet such a court will interfere "where the *fraud* does not go to the *whole will*, but only to some *particular clause*, or where the fraud is in unduly obtaining the consent of the next of kin to the probate, courts of equity will lay hold of these circumstances to declare the executor a trustee for the next of kin." 1 Story Eq. Jur., secs. 440, 184, 283, 252, 254. In *Gaines v. Chew*, 2 How. [ U. S. ] 619, Justice McLean, speaking for the court, gave a very strong intimation that if all other and ordinary methods of procedure failed of securing the requisite redress in the probate court, a court of chancery might feel called upon to fall back on its own inherent powers in order to accomplish the end desired. The foregoing instances of a court of equity refusing to interfere where fraud clothes the *whole will* as with a garment, and yet interferes where it vitiates with its

foul touch "some particular clause," is the only instance to be found in the books, where a court of equity fails to observe its predominant maxim to do "nothing by halves."

But, notwithstanding the refusal of a court of equity to entertain jurisdiction of a proceeding to set aside a will obtained by fraud, yet those equitable principles which obtain in that court respecting deeds and other contracts obtained by fraudulent contrivances, are constantly, and of necessity, applied by courts of law in instances and upon issues like the present one. This was so ruled in the two cases cited from our own reports. And the rule is the same elsewhere. Where confidential or fiduciary relations exist, and a gift be bestowed or a contract be made between such parties, then, the party occupying the attitude of guardian, agent, trustee, medical adviser, etc., who is the recipient of such gift, etc., has the *onus* to bear of establishing the absolute fairness of the given transaction. *Street v. Goss*, 62 Mo. 226, and cas. cit. ; *Yosti v. Laughran*, 49 Mo. 594, and cas. cit. ; *Cadwallader v. West*, 48 Mo. 483. And while it is true that undue influence will not be presumed, yet, where such facts are proved as will authorize a jury to find the existence of undue influence, then the burden shifts, and it then devolves on the party charged to exonerate himself from such charge, in like manner as in the case of fiduciary or confidential relations.

Courts of law, when called upon for redress in such cases, give it on precisely the same principle that guides courts of equity in analogous cases. That principle of redress, in order to be fully efficacious, must be as broad in its application as the mischief it is designed to meet and to remedy. In the apt and forcible language of Sir Samuel Romilly, in his celebrated reply in *Huguenin v. Baseley*, 14 Ves. 285, 286, " *The relief stands upon a general principle, applying to all the variety of relations in which dominion may be exercised by one verson*

*over another.*"    The only diversity observable in the application of the principle in question being this: that in case of fiduciary relations, a court of equity will presume confidence placed and influence exerted. Where no such relations exist, the influence or the dominion acquired must be proved; but when proved, the rule which equity applies is the same in the latter as in the former class of cases.  2 Pom. Eq., sec. 951, and cas. cit. ; *Dent v. Bennett,* 4 Mylne & Craig, 269 ; *Smith v. Kay,* 7 H. L. Cas. 779, *per* Lord Kingsdoun.

There is yet another ground why the *onus* should rest on the proponents of this will:   The testator, without apparent cause, virtually disinherited four out of six of his children, or their descendants.   George received the "lion's share," and his brother, Jno. D., the substantial residue.   It is laid down by a writer of eminent authority, that, "where the will is unreasonable in its provisions, and inconsistent with the duties of the testator, with reference to his property and family, *   *   * this, of itself, will impose upon those claiming under the instrument, the necessity of giving some reasonable explanation of the unnatural character of the will."  1 Redf. on Wills, 516.   "Gross inequality in the dispositions of the instrument, where no reason for it is suggested, either in the will, or otherwise, may change the burden, and require explanation on the part of those who support the will to induce the belief that it was the free and deliberate offspring of a rational, self-poised, and clearly disposing mind."  1 Redf. on Wills, 537 ; *Lynch v. Clements,* 24 N. J. Eq. 431, and cas. cit.

For the reasons given, the instruction must be held erroneous, and the judgment is reversed, and the cause remanded, with directions to proceed in conformity with this opinion.   All concur.