McFadin v. Catron.

McFADIN v. CATRON *et al.*, *Appellants.*

Division Two, February 13, 1894.

1. **Evidence**: IMPEACHING WITNESS: CONTRADICTORY STATEMENTS. Where a witness is sought to be impeached by contradictory statements made out of court the latter must not only relate to the issue but be a statement of facts and not an opinion of the witness.

2. ———: ———. A witness can not be examined on a subject not pertinent to the issue involved for the purpose of discrediting him.

3. **Will**: POWER OF DISPOSITION. Where property is left to a wife by will with full power of disposal, no oral statements or requests by the testator can control her disposition of it.

4. **Will, Contesting Validity of**: EVIDENCE. Evidence of the parsimoniousness of a beneficiary in a will in making the funeral arrangements is inadmissible in an action contesting the validity of such will.

5. ———: ———. Evidence of the sentiment of the public as to the unjustness of the will is also inadmissible.

6. ———: ———. Incoherent utterances of the testatrix on her deathbed are inadmissible.

7. **Will**: TESTAMENTARY CAPACITY: INSTRUCTIONS. The question of the testamentary capacity of the testatrix should not be submitted to the jury by instructions, where there is no evidence on which to found them.

8. **Will, Contesting Validity of**: EVIDENCE. In an action to set aside a will formal proof of its execution must be made by those propounding it although it has already been admitted to probate.

9. **Evidence**: WILLFUL FALSE SWEARING: INSTRUCTION, It is proper to instruct the jury that they may disregard the testimony of any witness who in their opinion has willfully sworn falsely to any material fact in issue where there are facts in evidence which authorize the court to give such instruction.

10. **Will Contest**: EVIDENCE. Evidence of the financial condition of plaintiff and defendant is admissible in a will contest if kept within reasonable bounds.

11. **Will, Validity of:** PRESUMPTION: BURDEN OF PROOF. The presumption is in favor of the validity of the will and the mere fact of unjust discrimination in its provisions does not shift the burden of establishing its validity on the defendant.

12. ———: ———: ———. Where, however, no reason for the unjust discrimination is shown by the will or otherwise and there is evidence of undue influence, the burden will be on the proponents to show a reason for the discrimination.

13. **Evidence:** HUSBAND AND WIFE, CONVERSATION BETWEEN. A wife is not a competent witness to prove what was said in a conversation between her husband and another, nor to prove any fact done in connection with said conversation and which might be explained thereby.

14. **Practice:** INSTRUCTIONS. An instruction should not single out particular facts in evidence and tell the jury they should consider them in determining the issues in the case.

15. **Will Contest:** EVIDENCE. Declarations of the testatrix concerning threats made against her by the chief beneficiary in the will are inadmissible in a will contest.

16. ———. The natural love and affection a testatrix may have for one child above the others, however great, is no ground for setting aside her will.

17. ———: UNDUE INFLUENCE. Nor is the mere existence of an improper or undue influence operating, but not exercised by the person possessing it, upon the mind of the testatrix when she makes the will sufficient ground for invalidating it.

18. ———: ———. The influence necessary to invalidate a will must have dominated the will of the testator so that it was not his own free act and deed; and this influence must have operated upon the mind of the testator at the time of the making of the will.

*Appeal from Saline Circuit Court.*—HON. RICHARD
FIELD, Judge.

REVERSED AND REMANDED.

*John E. Burden* and *Boyd & Murrell* for appellant.

(1) "The rule that the proof of contradictory statements goes to the credibility of the witness does not extend so far as to introduce previous expressed opinions of the witness." 1 Thompson on Trials, sec. 493. Such evidence is hearsay and immaterial. *Harper v. Railroad,* 47 Mo. 567; *Bank v. Overall,* 16 Mo.

App. 510; *Cable v. McDaniel*, 33 Mo. 363; *Dunn v. Altman*, 50 Mo. App. 231; *Holmes v. Anderson*, 18 Barb. 420. (2) The trial court erred in granting instruction number 8, asked by the respondent, as to the proof necessary to the *factum* of the will. "It is settled beyond doubt that the due execution of a will may be established by other evidence than such as may be derived from the subscribing witnesses." *Rugg v. Rugg*, 21 Hun, 385; *Norton v. Norton*, 2 Redf. 13; *Jauncy v. Thorne*, 2 Barb. ch. 40; *Peebles v. Case*, 2 Brad. 240. (3) The trial court committed error in granting instruction number 10, asked by the respondent, going to the credibility of the witnesses. "This court has never held that such an instruction should always be given under all circumstances. Such an instruction is always calculated to intimate that in the opinion of the court trying the case some of the witnesses had testified falsely." *White v. Maxcy*, 64 Mo. 559; *Shenuit v. Brucggestradt*, 8 Mo. App. 47; *Bank v. Murdock*, 62 Mo. 74; *State v. Palmer*, 88 Mo. 572. (4) The trial court erred in admitting in evidence, over the objections of appellant, the deposition of John Catron as to the wishes of Minatree Catron, and the verbal promises of Martha Catron to divide the property devised her by said Minatree Catron between her children according to his wishes, and the verbal declarations of Martha Catron that she intended to carry out her husband's wishes. (5) The trial court committed error, to the prejudice of the appellant, in admitting evidence as to the financial circumstances of the appellant and respondent and of respondent's husband, John McFadin, and their manner of living, and as to the amount of property the appellant had given his children, and in permitting the deeds made to and by the appellant, dated about 1853–1857, to be read in evidence to the jury. *Grimm v. Tittman*, 113 Mo. 57. (6)

The trial court committed error in granting instructions numbers 2 and 6, requested by the respondent, wherein the jury are told to consider the condition in life of the parties and their financial conditions in life. *Grimm v. Tittman*, 113 Mo. 66; *Couch v. Gentry*, 113 Mo. 248. (7) The trial court committed error in granting instruction number 6, asked by the respondent, wherein the jury are told that the defendants were required to explain the inequality in the will. "Inequality in the disposition of the testator's property does not cast the burden on the favored devisees to explain the unnatural and unequal provisions in the absence of any testimony showing undue influence." *Maddox v. Maddox*, 114 Mo. 35; *In re Gleespin's Will*, 26 N. J. Eq. 523; *Kitchen v. Beach*, 35 N. J. Eq. 446; *Wheeler v. Whipple*, 44 N. J. Eq. 141. (8) The court erred in admitting in evidence the testimony of Mrs. McFadin as to her husband's statements to the respondent, made in her presence. *Holman v. Bachus*, 73 Mo. 49; *Moore v. Wingate*, 53 Mo. 399. (9) There is not a *scintilla* of evidence in this case tending to prove that the testatrix had not testamentary capacity. The whole evidence is the other way, and this question ought not to have been submitted to the jury. *Brinkman v. Rueggesick*, 71 Mo. 553; *Couch v. Gentry*, 113 Mo. 248. (10) The trial court committed error in admitting in evidence the opinions of the physicians as to the mind, cancer and ailments of the testatrix, and in refusing to permit the proponent to cross-examine Dr. Alexander. (11) The trial court erred in granting instruction number 6, asked by the respondent, by which the burden is cast upon the proponent to explain the inequality in the will. In the absence of undue influence exerted in procuring the will, the burden of explaining or accounting for the inequality in the will is not cast upon the proponent. *Maddox v. Maddox*, 114 Mo. 35; *Wheeler v. Whipple*,

44 N. J. Eq. 141; *Turnure v. Turnure*, 35 N. J. Eq. 437. (12) The court below committed error in admitting in evidence the statements of Tom Catron, witness for respondent, as to James Henry Catron sending him to purchase a coffin for testatrix, "cheap for cash," and as to the sale of the cemetery lot. The only purpose and office of this immaterial evidence was to prejudice the jury against the proponent. *Garrett v. Greenwell*, 92 Mo. 125; *Winkley v. Foye*, 66 Am. Dec. 715. (13) The court below committed error in admitting evidence of the deathbed declarations of the testatrix. These declarations did not tend to show the condition of the testatrix's affections or mind, were connected with nothing, were not competent on the point of undue influence; they, therefore, supported no issue before the jury. *Kitchen v. Beach*, 35 N. J. Eq. 446; *Boyland v. Meeker*, 4 Dutch. 274; *Spoonemore v. Cables*, 66 Mo. 579; *Gibson v. Gibson*, 24 Mo. 227. (14) The verdict was the result of prejudice engendered by the immaterial, irrelevant and incompetent testimony admitted by the court. Where the verdict is the result of prejudice it will be set aside. *Winkley v. Foye*, 66 Am. Dec. 715; *Spohn v. Railroad*, 87 Mo. 84; *Garrett v. Greenwell*, 92 Mo. 125; *Whitsett v. Ransom*, 79 Mo. 258. (15) This court should not only reverse this case and not remand it, but it should enter up judgment that the paper dated June 2, 1890, propounded as the last will and testament of Martha Catron, is the last will and testament of Martha Catron, deceased. R. S. 1889, sec. 2304; *Jackson v. Hardin*, 83 Mo. 187; *Carroll v. Company*, 107 Mo. 654.

*J. D. Shewalter* and *Wallace & Childs* for respondent.

(1) A sound and disposing mind and memory is the ability to know that the party is disposing of prop-

erty by will, the general nature and character of the property, and what disposition is being made thereof, and to recall those dependent on the bounty of the testator. *Brinkman v. Rueggesick*, 71 Mo. 556; *Young v. Ridenbaugh*, 67 Mo. 574; *Jackson v. Hardin*, 83 Mo. 175; *Thompson v. Ish*, 99 Mo. 160. (2) Undue influence are acts or conduct which forces or controls the will of the person executing the paper and causes them to execute it, not according to their own, but another's, desires; in other words, it is the destruction of free agency. *Jackson v. Hardin*, 83 Mo. 175; *Sunderland v. Hood*, 84 Mo. 293; *Rankin v. Rankin*, 61 Mo. 295; *Brinkman v. Rueggesick*, 71 Mo. 553. (3) A proceeding under the statute to contest the validity of a will is in the nature of an action at law, and the appellate court will not set aside a verdict in such a proceeding on the grounds that it is against the weight of the evidence. There must be an entire absence of evidence on either issue. *Bush v. Bush*, 87 Mo. 480; *Young v. Ridenbaugh*, 67 Mo. 574; *Appleby v. Brock*, 76 Mo. 314. (4) And where the law has been declared with substantial accuracy, the verdict will not be disturbed for slight errors, when, taken as a whole, the instructions given present the law of the case fairly. *McClintock v. Curd*, 32 Mo. 422; *Mullen v. Hospital Ass'n*, 73 Mo. 242. (5) It is always competent to impeach a witness by showing he has made out of court statements as to material facts different from those made as a witness, his attention first being called to the time, place and persons present. (6) It is not proper to single out and comment on certain parts of the evidence by the instructions. (7) In a proceeding to establish a will in solemn form, the due execution of the will must be shown with the same formalities as in the probate court. The proceeding is in the nature of an appeal from the probate court, and the trial is *de novo*, though

the will has been admitted to probate. *Benoist v. Murin*, 48 Mo. 48; *Harris v. Hays*, 53 Mo. 90; *Lamb v. Helm*, 56 Mo. 420. (8) All witnesses may be impeached by contradictory statements as to material facts out of court, their attention first being called to the time, place and persons present; and that an instruction as to the credibility of witnesses should except attesting or other witnesses, is sustained by no authority. (9) The declarations of the testatrix as to the disposition of her property, are competent as showing her affections and state of mind at the time; the weight to be given thereto, depending upon the time of utterance. *Gibson v. Gibson*, 24 Mo. 227; *Tingley v. Cowgill*, 48 Mo. 291; *Rule v. Maupin*, 84 Mo. 587; *Thompson v. Ish*, 99 Mo. 160; Schouler on Wills, sec. 242; *Glover v. Hayden*, 4 Cush. (Mass.) 580. (10) Evidence of declarations of Mrs. Catron were competent, and the conversations and arrangements with her husband were competent, for the reasons and authorities *supra*. (11) The jury should be placed as near as possible in the place of the testator, and the financial condition of those dependent on her bounty is a proper subject of inquiry. *Young v. Ridenbaugh*, 67 Mo. 574; *Thompson v. Ish*, 99 Mo. 160. (12) Gross inequality, or practically disinheriting one child (and she poor) and giving a large estate to another (already rich) without apparent cause, raises the presumption of undue influence. *Gay v. Gillilan*, 92 Mo. 264; *Harvey v. Sullens*, 46 Mo. 152; *Harrel v. Harrel*, 62 Ky. 203. (13) The wife is the real and only party in interest, and she is a competent witness to a conversation she had with defendant, even though her husband was present and took part therein. *Henry v. Sneed*, 99 Mo. 407. (14) Testamentary capacity is correctly enough defined by defendant with the addition "of comprehending the general nature of her property."

(15) When the evidence is conflicting the testimony.of experts in hypothetical questions based on the evidence is competent. 1 Greenl. on Ev., sec. 440. (16) In cases of this character a wide range in the evidence is permitted, and undue influence can only be established, in most cases, by facts and circumstances. *Thompson v. Ish*, 99 Mo. 168; 114 Mo. 35. A proceeding under the statute to contest a will is in the nature of an action at law, and the supreme court will not weigh the evidence or disturb the finding where there is any evidence to support the finding on either issue. *Young v. Ridenbaugh*, 67 Mo. 574; *Appleby v. Brock*, 76 Mo. 314; *Bush v. Bush*, 87 Mo. 480. (17) The criticism of instruction number 2 is merely captious. If defendant, as the instruction declares, procured the will by "artifice, fraud, deception," etc., it is void, and it is immaterial whether he had or had not "an influence over his mother," though one may be tricked and deceived by one who has an influence much easier than by one who has none. (18) There was no error in instruction number 1. It simply defined the two grounds of contest.

BURGESS, J.—This is a suit to set aside the will of Martha Catron, late of Lafayette county. The venue was changed to Saline county on application of defendant. The will bears date June 2, 1890, and she died on the thirtieth day of March 1891, at the advanced age of about eighty-three years. She left surviving her two children, a daughter, Francis E. McFadin and a son, James Henry Catron. By the terms of the will she gave to George M. Catron, trustee, and his successors named in the will, $5,000 in trust for the use of her daughter during her life, and at her death to her children absolutely, and gave the residue of her estate, amounting, including lands, money and personal prop-

erty, to about $50,000, to her son James Henry. The will is assailed on two grounds: *First*, want of mental capacity on the part of the deceased; and, *second*, fraud and undue influence exercised by James Henry Catron. The trial resulted in a verdict setting aside the will.

There was a vast amount of evidence introduced, much of which was irrelevant and had no bearing whatever on the issue involved. The husband of Martha Catron died testate in August, 1862, of his own act, leaving to her the lands in question and all of his personal property. In 1867 the testatrix executed a will whereby she gave to her daughter $4,000 for her sole use and benefit, and to the benefit of her children, heirs of her body, and then gave all the residue of her personal property to her son absolutely and her estate to him during his natural life, with remainder to his children. She is shown to have been a woman of more than ordinary strength of mind and determination, and attended to her property and business affairs partly herself and partly through others. She, by her successful management, accumulated about $17,000 worth of property after the death of her husband and before hers, during all of which time she lived on a farm about five miles from Lexington, which was devised to her by him.

A day or two before she made her will she sent a message to George M. Catron, a nephew of her deceased husband, requesting him to come to her house. On the second day of June he arrived there, and when he reached the house found his brother *James F. Catron* and Lock Terhune in the room with Mrs. Catron. After a short time they left the room, leaving George M. Catron and the testatrix alone in the room. The testatrix then requested him to write her will, and told him how she wanted to dispose of her property, and

he wrote it as she directed, no other person being in the room.  After it was written *James F. Catron*, Lock Terhune and Mary Terhune, at the request of the testatrix, came into the room, when she stated to them that she had made her will and desired them to witness it.  She signed it in their presence and they then signed it as witnesses in her presence and in the presence of each other.  She then had a cancer on her breast but was able, and for some time thereafter, to dress the cancer, and dress and take care of herself.

There was some evidence tending to show that the mother did not entertain the same tender affection and regard for her daughter that she did for her son. The daughter lived at the time of the execution of the last will in the same neighborhood with her mother while the son lived at that time and has since 1865, in Nebraska City, but he visited his mother once or twice a year.  The son was at his mother's house a short time before the will was executed but at the time of its execution he was at his home in Nebraska City, two hundred miles away, and had no information that the will had been made until he returned to his mother's home about two weeks after.  The will of 1867 was delivered by the testatrix to her son and remained in his possession for twenty-two years before the last one was made.

Evidence was introduced of declarations made by the testatrix at different times for several years to shortly before her death to the effect that the McFadins should have none of her real estate and not more of her personal estate than the amount given her daughter by the will.  All of the witnesses to the will testified to the sound mental condition of the testatrix at the time of its execution, in which they were corroborated by other witnesses.  Defendant was quite wealthy, being worth about $100,000; while the plaintiff's hus-

band owns a farm, she·had no property except forty acres of land worth about $1,600.

It is insisted by counsel for defendant that the trial court committed error in allowing the plaintiff to propound questions on their cross-examination of Lock Terhune, Mary Terhune and Belle Shelby, who were witnesses for defendant, concerning certain statements and opinions made and expressed by them, and in allowing the answer to such questions to be received in evidence over defendant's objections as proof of the truth of the facts stated in such statements and opinions. The following questions and answers of Lock Terhune will sufficiently illustrate the point:

"*Q.* Did you not, about two weeks after the probate of the will, in front of Trigg's store in Lexington, Missouri, to and in the presence of Judge T. A. Catron, in talking about that business with Henry say: 'Henry had better mind what he is doing. I know enough facts to break that will,' or words to that effect? *A.* I did not say any such word; me and Tom Catron had a talk about it.

"*Q.* Did you not say to and in the presence of Tom Catron, a short time after the sale of the personal property, just near the railroad crossing, in answer to a statement of T. A. Catron, that the will was very unjust and unchristian; say, 'and it can be broken, if the facts are gotten all right,' or words to that effect? *A.* Not in those words.

"*Q.* Did you not, in the conversation with W. M. N. Green, in Lexington, in front of Trigg's store, three or four days after Mrs. Catron's death, when Green asked you if she had made a will, reply that, 'it will not stand; they will break it. Henry used too much influence to have her to make the will the way he wanted it;' that 'Henry went so far as to say that if his mother did not make her will to suit him, that he would commit

suicide?' *A.* Mr. Green and I had a conversation, but not in those words. I have a conversation with him when I go to town because I am almost sure to meet him."

"With reference to the last question, W. M. N. Green, a witness for plaintiff, was asked whether he had heard Terhune say that, or words to that effect. The witness answered, 'that was about the purport of what he had said.'"

Lock Terhune and Mary Terhune, as has been stated, were two of the attesting witnesses to the will and had testified to the testamentary capacity of the testatrix at the time of its execution. These questions were not with reference to anything that Henry Catron had said, or what the witness had seen him do, but merely as to the expressions of the opinion of the witnesses as to the provisions of the will, that it might be broken; had no bearing whatever upon the issues involved, and should have been excluded. The evidence (if it can be called such) was clearly incompetent, and could have had no possible effect other than to mislead the jury and distract their minds from the legitimate and proper investigation of the case. The statements which were sought to be elicited from Terhune and which were proven by the witness Catron and other witnesses in regard to similar matters, would not have been admissible if they could have been proven by direct testimony, as the mere opinion of a witness is not permissible under such circumstances and with respect to such matters. "The rule [that the proof of contradictory statements goes to the credibility of the witness] does not extend so far as to introduce previous expressions of opinion made by the witness." 1 Thompson on Trials, sec. 493; *Com. v. Mooney*, 110 Mass. 99.

In *Holmes v. Anderson*, 18 Barb. 420, it is held that

the rule which allows a party to impeach a witness by showing that he has made statements out of court, inconsistent with what he testifies to in court, must not only relate to the issue, but it must be a matter of fact, and not merely a former opinion of the witness in relation to the matter in issue inconsistent with a different opinion which the facts testified to by him tend to establish.

Nor can a witness be interrogated on a subject not pertinent to the issues involved for the purpose of discrediting him. *Harper v. Railroad*, 47 Mo. 567; *Bank v. Murdock*, 62 Mo. 70.

What has been said with reference to the cross-examination of Lock Terhune applies with like force to that of Mary Terhune and Belle Shelby.

The deposition of John Catron, brother of Minatree Catron, husband of the testatrix, Martha Catron, was introduced and read in evidence on behalf of the plaintiff against the objection of defendant. In his deposition the witness testifies as follows:

"*Q.* If you had any conversation with your brother, Minatree Catron, not long prior to his death, concerning the disposition of his property, please state what that conversation was, and when and where and how it took place? *A.* Well, about the spring of 1862, I went over to see my brother, he was in feeble health, at his house; while I was there we got the news of the Pea Ridge battle between the Federal and Confederate armies; it seemed to excite and alarm him very much; he told me he was satisfied that the Southern Confederacy would be a failure, and that every able bodied man would be forced in the army on both sides and that his son, Henry, and son-in-law, John McFadin, would be forced to go in the army, and that the Southern Confederacy would be lost, and that all the property would be confiscated by the Federal gov-

ernment and for the purpose of protecting his property for his children he thought it best to will it to his wife; when the war was over she could distribute to his children as he wished, and he had confidence in her, that she would do so.   She was present all the time these statements were made; he stated that he did not wish his son-in-law, John McFadin, to have any of his property; the reason was that John McFadin had waylaid him in the public road and made an assault on him to beat him; he had to wheel his horse around and make haste to Lexington to save himself and to get assistance to go home.   He wanted the property fixed so that his daughter Evaline and her bodily heirs could hold it from her husband.   About this time his wife, Martha Catron, spoke up and said that she would carry it out according to his wishes. · I answered him there that I thought he was acting wisely; that he was protecting his children, and we parted with the understanding that he would make his will giving his property to his wife.

"*Q*. Did you ever ask your brother after that if he had made his will as he had expected, or did you learn in any way that he had done so prior to his death? *A*. I don't think I ever asked him, but I learned that he had made a will."

We are unable to see what this evidence had to do with the question of testamentary capacity of the testatrix, or of undue influence over her thirty or more years after the conversation occurred to which the witness testified.   Minatree Catron gave to his wife, Martha Catron, absolutely and unconditionally all of the property that he owned at the time of his death, with full power to dispose of it as she might think proper and no verbal statement or request that he made to, or of, her could in any manner control its disposition by her.

Evidence of the declarations of a testator, made both before and after the execution of the will, are admissible in a suit to set it aside upon the grounds of the want of testamentary capacity or that it was executed from fear or undue influence. They are then received as external manifestations of the mental condition of the testator, *and of the state of his affections,* and not as evidence of the truth of the facts stated. *Rule v. Maupin,* 84 Mo. 587, and authorities cited. But in order to be admissible they ought to have some direct connection with, and tendency to show, the condition of the mind of the testator at the time of the execution of the will. In *Rule v. Maupin, supra,* the declarations of the testator which were introduced in evidence were made about ten years before the execution of the will, and the court said "they were of little value and might have been excluded." But in the case at bar the statements were made, not by the testatrix, but by Minatree Catron, who had no connection whatever with the will in contest, and whose statements were mere hearsay, and not admissible for any purpose whatever.

Plaintiff was also permitted to prove, over the objections of defendant, what he, defendant, should have said after his mother's death in regard to buying a coffin for her for cash, that things could always be bought cheaper that way; that in 1858, he should have said while exhibiting his pocketbook and speaking with reference thereto that his soul was in it; that the testatrix had promised to leave Hall Arbuckle, an old colored servant, a home; and stranger still, the public sentiment in and about Lexington as to the unjustness of the will, which could have no effect on the trial, other than to have prejudiced the minds of the jury against the defendant, and should have been excluded. The fact that defendant may have introduced similar

evidence, did not justify its admission on the part of plaintiff over the objection of defendant.  Best on Evidence, sec. 262, note 1; *Landa v. Obert*, 25 S. W. Rep. 344.

It was further proven, over the objections of the defendant, that during the late sickness of the testatrix, she was heard to remark: "Am so sorry—so sorry —troubled, so troubled; too late, too late."  There was no connection whatever between these remarks and the execution of the will or of its provisions, and it is impossible to see upon what theory they were permitted to be proved.  No one was able to state from anything that she had said or done to what she had reference and it is the merest conjecture to say that her expressions had reference to the provisions of her will.  It might as well, and could, perhaps, with as much reason, be said that it was something "beyond the river" that was the subject of her thoughts, as it was of her children for whom she had by her will already provided.

It would seem that the relative conditions of both plaintiff and defendant, from a financial standpoint, could as well have been proven in a general way as by the introduction of the records of all the deeds, which incumber the record to no useful purpose.

The facts which have any tendency to show want of mental capacity in the testatrix, were, her advanced age; her suffering from cancer from eight to ten years, which caused great mental anxiety and physical suffering; rheumatism; and enlarged and stiff knee; the decline of her general health; the rough and incorrect account book which she kept; her failing memory; the contract which she made with Terhune, by which he was to work her two farms and give her one-half of the entire proceeds, each party paying one-half of all the expenses.  Upon the other hand, a careful reading of

the evidence shows that she was a woman of unusually strong mind, attending principally to her own business affairs, managing by herself and through others a large and successful farming interest, by which she had accumulated a large amount of money and property; the fact that she had in 1867, over twenty years and more before, made the will whose provisions as to the amount of money given the plaintiff, and the property given to the defendant were almost exactly like the will in contest; that she sent for George M. Catron to come and write her will; that she went on and told him what she wanted her will to convey; that she wanted to begin with Evaline, the plaintiff, first, what she wanted her to have; that she wanted him to be trustee for her daughter, and that when he suggested to her that he might not be living at the time her will was probated, she named J. W. Catron, when he again suggested "suppose he should not act for some cause," she then said "put in Tom Catron;" that, after it was written and read over to her, "she said it was exactly as she wanted it." When the witnesses came in to witness the will, at her request, she got up and said: "This is my will. I want you all to sign it as witnesses and to witness my signature;" that she then took up the pen and wrote her name; that all the attesting witnesses testified that her mind was unimpaired, which was corroborated by a large number of other witnesses. The conclusion is irresistible that she then had sufficient understanding to know her property and determine that the will made that disposition of it which she desired, which was all that the law requires in this case; and, furthermore, she knew fully the legal effect of all its provisions upon the interests and estates devised. *Young v. Ridenbaugh*, 67 Mo. 574; *Thompson v. Ish*, 99 Mo. 160; *Maddox v. Maddox*, 114 Mo. 35.

It necessarily follows, from what has been said,

that the court committed error in giving the first, second, fifth and sixth instructions on behalf of the plaintiff, and in thereby submitting to the jury the question of testamentary capacity of the testatrix at the time of the execution of the will, because of the want of testimony upon which to predicate them. *Maddox v. Maddox*, 114 Mo. 35; *Jackson v. Hardin*, 83 Mo. 175.

The eighteenth and nineteenth instructions asked by defendant should have been given. They are as follows:

"18. The court instructs the jury that Martha Catron acquired by the will of Minatree Catron the absolute title to all property devised to her thereby, and had full power to dispose of the same as she pleased and to whom she pleased, and the said right is not affected by anything the said Minatree Catron may have said in regard to his said will, either before or after its execution; and the jury will disregard all evidence tending to show what said Minatree Catron said in reference to said will or to making it; or as to his desire to what she should do with the property.

"19. The jury are instructed that the will of Minatree Catron read in evidence was the last, best and only evidence of his intentions as to the final disposition of his property; and all declarations of said Minatree Catron and promises of Martha Catron made to him to carry out his wishes with respect to said property devised her by said Minatree Catron in his said will are not to be considered by the jury."

There was no error in giving the eighth instruction on behalf of the plaintiff as to the formal execution of the will. The law is that formal proof of the execution must be made by those propounding it, although it has already been admitted to probate. *Harris v. Hays*, 53 Mo. 90; *Lamb v. Helm*, 56 Mo. 420.

The tenth instruction given at the request of the plaintiff to the effect that the jury might disregard the testimony of any witness who, in their opinion, had willfully sworn falsely to any material fact in issue, was most unquestionably correct and authorized by the facts in the case. It has in substance repeatedly met with the approval of this court. *Brown v. Railroad*, 66 Mo. 588; *State v. Elkins*, 63 Mo. 159.

It is claimed, however, that the court committed error in admitting evidence as to the financial circumstances of the defendant and of plaintiff and her husband, and as to the amount of property defendant had given his children. In *Thompson v. Ish, supra*, it was ruled that such evidence was admissible, provided it was kept within reasonable bounds. To the same effect is *Fairchild v. Bascomb*, 35 Ver. 398. But the evidence in regard to the property which defendant had given to his children should have been excluded as well also as the deeds to and from defendant.

The sixth instruction for plaintiff is as follows:

"6. The jury are instructed that in making up their verdict in this case they should consider the relationship of the beneficiaries, named in the paper read in evidence, to the testatrix, their condition in life and the amount and value of the estate of the testatrix; and if the jury believe from the evidence that a discrimination was made in favor of one of said beneficiaries, and that there is a great inequality in the distribution of the estate between the children of the testatrix, then it devolves upon the defendant to explain said discrimination and inequality and to show that said instrument was the free, deliberate offspring of a rational, self poised and clearly disposing mind."

The instruction should not have been given in the form that it was. It was held in *Harrel v. Harrel*, 1 Duv. (Ky.) 203, that where there is gross inequality

in the dispositions made in a will, when no reason for it is suggested in the will itself or by the proof on the trial, satisfactory evidence is required that it was the free and deliberate offspring of a rational, self poised and clearly disposing mind. But the facts in that case showed beyond any question that the will *was obtained by undue influence* of the wife.

Mr. Redfield, in his work on the law of wills (vol. 1, p. 537) says that "where no reason for it is suggested, either in the will, or otherwise," gross inequality in the dispositions of the will may change the burden. The rule thus announced was followed and approved by this court in *Gay v. Gillilan,* 92 Mo. 250. The vice of the instruction is that it assumes that there was no reason for the discrimination shown by the will or by the evidence, while there *were facts in proof which tended* to show a reason for it. In that case also the facts showed, aside from the unjust discrimination in the will that it was obtained by fraud and threats of the son.

In view of the evidence which showed that more than twenty years or more before, the testatrix had executed a will of which the one in contest is almost a counterpart; that she had said that the McFadins should never have any of her lands; that her daughter said that she "had driven her father to suicide" for which her mother said "that she would never forgive her;" her displeasure because her daughter conveyed away a tract of land in Carroll county, land that her father gave her; her statements that her daughter had "given her a great deal of trouble;" her manifestations and expressions of greater affection for her son than for her daughter; her many letters to her son filled with expressions of tenderness and affection; and other circumstances of a similar character, upon a retrial, we think the jury should be instructed that if they *believe*

*from the evidence* that there was reason for the discrimination, the burden of proof was not shifted to defendant to show that the will was the free act of the testatrix, but was on the plaintiff to show it was obtained by undue influence.

The presumption is in favor of the validity of the will, and it can not be that the mere fact of unjust discrimination in its provisions between those thereby provided for, without more, shifts the burden on defendant if the facts in proof suggest a reason for such discrimination, which was a question for the jury. To announce such a rule would be in effect to hold that no one could by will make a seemingly unjust discrimination between those entitled to his or her bounty without giving a reason therefor in the will. But when no reason for the unjust discrimination is shown by the will or otherwise, and there is evidence of undue influence, then the burden of proof is on the proponents of the will to show some reason for the discrimination.

In *Moore v. Moore,* 67 Mo. 192, the deed was sought to be set aside because of unjust discrimination in its provisions and undue influence, and it was said by NORTON, J., and concurred in by all of the court: "But even if this had appeared and nothing more; if old man Moore had mind and memory enough to comprehend and understand the value of the property, and the condition and situation of those who had claims on his bounty, he had the right to make the deed in question, and it is not sufficient, to impeach it, that it is not in all respects as might have been expected. It is not enough to show that a parent has made an unequal distribution of his property. A man has a right to dispose of his property by deed or will as he pleases."

This position finds support in *Gay v. Gillilan,* 92 Mo. 250, *supra,* where SHERWOOD, J., speaking for the court, says: "And while it is true that undue influ-

ence will not be presumed, yet, *where such facts are proved as will authorize a jury to find the existence of undue influence,* then the burden shifts, and it then devolves on the party charged to exonerate himself from such charge, in like manner as in the case of fiduciary or confidential relations."

It is true that Mr. Redfield, in his work on the law of wills, vol. 1, p. 516, says that when the "will is unreasonable in its provisions, and inconsistent with the duties of the testator, with reference to his property and family," that of itself will impose upon those claiming under the instrument the necessity of giving some reason for it. The authority upon which the position is predicated is *Clark v. Fisher,* 1 Paige, 171; but an examination of that case will show that the will, aside from the unjust discriminations, was unquestionably obtained fraudulently and by undue influence. The court says: "Besides, the will itself is unreasonable on its face, when taken in connection with the amount of his property and the situation of his relatives; and this is always proper evidence to be taken into consideration in judging of the state of the testator's mind." It will thus be seen that the position of the writer is not supported by that case.

In *Knox v. Knox,* 11 Southern Rep. 125, it is said: "In the next place, the law does not undertake to prescribe the duties of a testator to his family, in regard to the disposition of his property; and again, although a testator might not dispose of his property equally to his next of kin, that fact alone does not raise a presumption of mental incapacity or undue influence. The manner in which a testator disposes of his property is a fact in evidence to be considered with other facts in determining the issue; but there is no conclusion of law from such a fact as to shift the burden of proof upon proponent or the beneficiaries under the will, to

show a sound mind or freedom of will on the part of the testator. It is a mere circumstance to be weighed by the jury." *Eastis v. Montgomery*, 9 S. Rep. 311.

This we understand to be the rule announced in *Maddox v. Maddox*, 114 Mo. 35, and which we think sustained by both reason and authority. There was no evidence in that case, aside from the provisions of the will, of fraud or undue influence, while in the case of *Gay v. Gillilan* there was conclusive evidence of fraud and intimidation. The cases must be construed with respect of the facts involved, and when that is done there is no conflict between them.

The evidence of Mrs. McFadin in regard to a conversation between her husband and James Henry as to what was said by them in that conversation was improperly admitted in evidence. The wife is not a competent witness to prove what is said in a conversation by another person with her husband, nor to prove any act done in connection with such conversation and which might be explained thereby. *Holman v. Bachus*, 73 Mo. 49; *Moore v. Wingate*, 53 Mo. 399.

The seventh instruction for plaintiff is faulty in that it singles out particular facts and tells the jury in determining whether undue influence was used by the defendant, James Henry Catron, to procure the making of the will of said Mary Catron, they will take them into consideration. Similar instructions have met with the disapproval of the appellate courts of this state as calculated to mislead and unduly influence the jury. *Kendig v. Railroad*, 79 Mo. 207; *Judd v. Railroad*, 23 Mo. App. 56.

There was no evidence in this case that James Henry Catron had ever at any time made threats against his mother. And even if he had, no declarations made by her, either before or after making her will, were competent evidence to prove fraud in obtaining it.

*Kitchell v. Beach*, 35 N. J. Eq. 446; *Spoonemore v. Cables*, 66 Mo. 579; *Gibson v. Gibson*, 24 Mo. 227; *Cawthorn v. Haynes*, 24 Mo. 237.

The natural love and affection that a parent may have for one of his or her children over another, however great it may be, is no justification for setting aside a will; nor is the mere existence of an undue or improper influence operating, but not exercised by the person possessing it, upon the mind of the testator when he makes a will, sufficient to invalidate it. *Sunderland v. Hood*, 84 Mo. 293; *Brinkman v. Rueggesick*, 71 Mo. 553. But such influence must dominate the will of the testator so that it can not be his own free act and deed, and this influence must have operated upon the mind of the person making the will at the time thereof. The influence which would be necessary to invalidate the will in this case must have been such as amounted to over-persuasion, coercion or force, destroying the free agency or will power of the testatrix. *Jackson v. Hardin*, 83 Mo. 175.

The evidence does not disclose that there existed any such confidential relation between James Henry Catron and his mother as would place the burden of proof upon him as to the absence of undue influence on his part in procuring the execution of the will.

The judgment will be reversed and cause remanded for trial in conformity to the views herein expressed. It is so ordered. All of this division concur.