# THE SUPREME COURT

#### OF

## THE STATE OF MISSOURI,

### AUGUST TERM, 1871, AT ST. JOSEPH.

48 291
33a 371
48 291
37a 182
48 291
110 461
48 291
119 624
48 291
122 518
59a 475
48 291
174 ²224

---

JEREMIAH TINGLEY *et al.*, Respondents, *v.* RACHEL COWGILL
*et al.*, Appellants.

1. *Will, suit to contest validity of — Issues framed — Construction of statute
— Burden of proof on whom.* — In a proceeding under the statute to contest
the validity of a will, it is error for the court to refuse, on motion of counsel,
to frame an issue for the jury as to whether or not the writing produced was
the will of the testator. (Wagn. Stat. 1368, § 29.)

In such a suit the *onus* is on the defendants who seek to establish its validity,
and they are entitled to open and close.

2. *Will, suit to contest validity of — Wife may testify in.* — In an action to
contest the validity of a will, the wife is not precluded from testifying by
reason of anything contained in the statute concerning witnesses (Wagn.
Stat. 1372-3, §§ 1-5). That act contemplates cases where the husband is the
real party in interest; whereas, in the case supposed, the wife is the real and
the husband merely a nominal party.

3. *Wills — Undue influence — Bad treatment of children, proof touching.* —
Mere bad treatment of children, exerted or exercised by the wife many years
previous to the making of a will, although coupled with their disinheritance
by the testator, does not necessarily furnish a reason for impeaching its valid-
ity. It should be followed up by proof showing that undue influence was
acquired by her in consequence, and that the influence continued down to the·
time when the will was executed.

4. *Witnesses — Medical men cannot give opinions as to the merits of a cause.* —Medical men, when called as scientific witnesses, cannot give their opinions as to the merits of a cause, but their opinions must be predicated upon the facts proved. Where, however, the facts are doubtful, they may be asked their opinion upon a case hypothetically stated.

5. *Will, suit to invalidate — Testator, declarations of.* —In an action to contest the validity of a will, declarations of the testator made before the date of the will are inadmissible. (Gibson v. Gibson, 24 Mo. 227.)

## *Appeal from Linn Circuit Court.*

*Hall, Broaddus et al.*, for appellants.

I. The court committed error in refusing to direct an issue to be made up in accordance with the prayer of the petition, whether the writing purporting to be the will of John Cowgill, deceased, was his will or not. (Wagn. Stat. 1368, § 29.)

II. The parties sustaining the will held the affirmative and were entitled to open and close the case. The history of the proceedings shows that the defendants were injured by refusing them this right. (Gen. Stat. 1865, p. 529, § 17; *id.* 530, § 29; 28 Mo. 19; 13 Ill. 15; 5 Ohio, 279; 11 Ohio St. 329; 1 B. Monr. 391–2, 397; 2 Gray, 526; 1 Redf. Wills, 30–1; 2 Greenl. Ev., § 689; 1 Greenl. Ev., § 77; Wagn. Stat. 1366, § 17.)

III. Neither Mrs. Tingley nor Mrs. Hammond nor Mrs. Hearne were competent witnesses in this case. Their husbands were parties to the suit. Our statute concerning witnesses is explicit that a married woman shall not be a witness in a civil suit to which her husband is a party, except in the cases therein mentioned. These exceptions do not extend to or include the evidence of Mrs. Tingley and Hammond and Hearne in this suit. (Gen. Stat. 1865, p. 587, § 5; 20 Ind. 150; 28 Ind. 88; 25 Ind. 106; Wagn. Stat. 1373, § 5.)

IV. The evidence with reference to Mrs. Cowgill's treatment of her step-children was incompetent and inadmissible. The bad treatment of the testator, or of his children by his wife, is no evidence of undue influence in procuring the execution of his will. If such evidence is entitled to any weight, it is evidence that the will was not procured by the influence of the wife. Such con-

duct would naturally and ordinarily weaken a wife's influence, and occasion a feeling of resentment on the part of the husband toward his wife, and not of affection for him. (20 Penn. 11, 330.)

V. The conversations of the testator were not competent; they were had long anterior to the date of the will. It is admitted that they were not evidence of any facts stated by the testator. To say that they were admissible for the purpose of showing the state of testator's mind twenty years before the will in suit was made, is to evade a plain principle of law by a bold and flimsy pretext. (26 Mo. 228, 237.)

*Woodson, Ray, Mansur, Collier et al.*, for respondents.

I. Section 29 of the act on wills does not say how the issue shall be made up. The practice of the courts has not been uniform on this subject; and it is only a matter of practice, for which a reversal will not be had, even if error was committed therein. Section 1, article IX, of the practice act tells us how issues are made up. It declares that "issues arise upon the pleadings when a fact or conclusion of law is maintained by the one party and controverted by the other." The pleadings in this cause were made up under the direction of the court, and the issues arose upon the allegations and denials, as in other causes. Besides that, the court, in its instructions to the jury, plainly made up the issue and submitted the same to the jury for trial. (32 Mo. 420.)

II. Plaintiff was entitled to open and close. (See. Wade v. Scott, 7 Mo. 514; Farrell's Adm'r v. Brennan's Adm'x, 32 Mo. 328 or 332; McClintock v. Curd *et al.*, 32 Mo. 411; Comstock v. Hadlyme Ecclesiastical Society, 8 Conn. 254; Marshall *et al.* v. Wills *et al.*, 7 Wis. 1; Rich v. Jones, 9 Cush. 329; Hill. New Trial, 107, §§ 19–21, and authorities cited, and also same authority as to form of verdict.)

III. Mrs. Tingley and the other female plaintiffs were the real parties in interest, and their husbands merely nominal ones. In such a case they testify in their own behalf, and not for or against their husbands, who are merely nominal parties. (See Hooper v. Hooper, 43 Barb., N. Y., 292; Gee v. Lewis *et al.*,

20 Ind. 149 ; 15 Wis. 246 ; 9 Gray, 72 ; White v. Stafford, 38 Barb., N. Y., 424 ; 20 U. S. Dig. 981, § 156.)

IV. As to the admissibility of declarations made by testator, long before and after the time of making the will, there was no error. (Dennison *et al.*, 29 Conn. 399 ; Calvin v. Warford, 20 Md. 357; Hull *et al.* v. Potter *et al.*, 40 Penn. St. 483 ; Beaubien v. Cicotte, 12 Mich. 459 ; 1 Redf. Wills, 536, § 51, and authorities cited ; *id.* 542, § 6.)

V. As to undue influence, see 12 Mich. 459 ; 20 Mo. 306 ; 20 Md. 357 ; 20 Penn. 475 ; 46 Mo. 147 ; 27 Iowa, 111 ; 11 U. S. Dig. 471, §§ 5–7, 9–10 ; 46 Mo. 147 ; Harrell v. Harrell, 1 Duvall, Ky., 203 ; 1 Redf. Wills, 506–512, note 14 ; *id.* 513–14 ; *id.* 542, § 6 ; *id.* 545, *d* ; *id.* 514, §§ 12, 14 ; *id.* 518, § 18 ; *id.* 520, § 24 ; *id.* 536–7, §§ 52–3 ; 11 U. S. Dig. 471, §§ 5–10, 31.

WAGNER, Judge, delivered the opinion of the court.

This was a proceeding under the statute to contest the validity of the will of John Cowgill, deceased, which had been admitted to probate in the Probate Court of Livingston county. From the record it appears that the testator had been twice married, and had two sets of children, eight in all, four by the first marriage and the same number by the second. At the time of his death the children were all grown. By the disposition of his property made in his will, he devised and bequeathed all his property to his wife Rachel and her son Henry, and the remainder of the children were substantially disinherited, receiving nothing but mere nominal shares. The reasons stated in the petition for contesting the validity of the will are that the testator, when he made and executed the same, was not of sound and disposing mind, and that it was obtained by fraud and undue influence exercised upon him by Rachel and Henry, the devisees. These allegations are explicitly denied in the answer. Upon the trial of the cause the defendants moved the court to have an issue made up and framed as to whether the writing produced was the will of the testator or not. This the court refused to do, and this refusal is assigned as the first ground of error. The statute is plain and express on

the subject.   It provides that if any person, by petition to the Circuit Court, shall contest the validity of a will, an issue shall be made up to be tried, as to whether the writing produced is the will of the testator or not.   (2 Wagn. Stat. 1368, § 29.)   I think the court clearly erred in not complying with the request. Under a similar statute in Ohio the court say that the statute itself having prescribed the issue, it must be followed.   (Green v. Green, 5 Ohio, 279.)

The defendants further requested that they should be allowed to open and close the case to the jury, but the court denied them that privilege and awarded the opening and close to the plaintiffs. Upon this point there is not an entire uniformity in the practice, and the decisions in this as well as in other States are conflicting. The issue in these cases is whether the writing produced is the will of the testator or not, and the *onus* or burden of proof is cast upon the defendants who seek to establish its validity.

In the case of Cravens v. Falconer, 28 Mo. 19, it was decided by this court that, as the burden of proof rested upon the defendants, they had the right to open and close the case to the jury.

In Farrel's Adm'r v. Brennan's Adm'x, 32 Mo. 328, the judge delivering the opinion expressed doubts as to the correctness of the ruling in Cravens v. Falconer, and was inclined to the view that the plaintiffs, or the party attacking the will, should be allowed to open and close ; but he said that an error in that respect furnished no ground for a new trial, unless the party had been materially injured thereby.   When the issue is made up, the defendants, endeavoring to establish or hold under the will, affirm that the paper writing is the last will and testament of the testator.   They then have the affirmation of the issue to be tried, and are entitled to open and conclude.

In my judgment the case of Cravens v. Falconer enunciates the correct doctrine, and is supported by the best reasoned cases decided elsewhere.

Mrs. Tingley and Mrs. Hammond were married daughters of the testator, and they and their husbands were plaintiffs of record in the cause.   An objection was raised that Mrs. Tingley and Mrs. Hammond being married women and joined with their

husbands, were incompetent to testify. But this objection was overruled, and they were permitted to give evidence. Whether their testimony was admissible depends upon a construction of our statute in reference to witnesses.

The first section of the statute removes the common-law disability in regard to parties to the record testifying in their own behalf. The fifth section provides that no married woman shall be disqualified as a witness in any civil suit or proceeding prosecuted in the name of or against her husband, whether joined or not with her husband as a party, in the following cases, to-wit: first, in actions upon policies of insurance of property, so far as relates to the amount and value of the property alleged to be injured or destroyed; second, in actions against carriers, so far as relates to the loss of property and the amount and value thereof; third, in all matters of business transactions where the transaction was had and conducted by such married woman as the agent of her husband. (2 Wagn. Stat. 1372–3, §§ 1–5.)

It is now contended that, as the witnesses do not come within either of the enumerations in section 5, which expressly authorize a married woman to give evidence when joined with her husband, they must necessarily be excluded. But I do not think that such a ruling would carry out either the meaning or spirit of the statute. The first section permits every party to the record to give evidence. Now, in the case at bar, the real parties are the married women, the cause of action rests in them, and without them the husbands would have no interest. They are the parties, and although the law authorizes the joinder of the husbands, still the husbands are merely nominal parties, as they are not heirs at law. Under such circumstances I think that Mrs. Tingley and Mrs. Hammond were parties entitled to give evidence within the meaning of the first section of the statute, and such has been the ruling of the courts in the States having the same statutory provision. (Hooper v. Hooper, 43 Barb. 292 ; Barber v. Goddard, 9 Gray, 71; Gee v. Lewis, 20 Ind. 149; Robinson v. Hutchinson, 31 Verm. 509.)

The evidence admitted, of bad treatment of the children of the first marriage by Rachel, at the time and shortly after her mar-

riage with the testator, will now be noticed.   This evidence was of facts transpiring many years previous, whilst the parties lived in Indiana.   The testimony tended to show that Rachel discriminated against her husband's children by his first marriage, in favor of her own, and that she treated them harshly and rudely. But it is not shown that she acquired an undue influence over her husband's mind, or that she succeeded in alienating his affections from his elder children.   Bad treatment of the children exerted or exercised many years previous to the making of the will, taken singly and disconnected, does not necessarily furnish a reason for impeaching its validity.   Such conduct by a stepmother would operate on different persons in different ways.   On some it might have a tendency to produce an injurious influence, whilst on others it would have a directly opposite effect.   But it may be presumed as a pretty correct proposition that general bad treatment alone is not sufficient; it should be followed up by proof showing the effect it had on the testator's mind.   The essential characteristic of a good testament is that the mind of the testator in making it should be free and not influenced or moved by fear, fraud, or undue flattery.   The constraint or unfairness, to avoid a will, must be operative on the mind of the testator at the time of making the will.   Therefore harsh treatment, or even an exertion of influence long past and gone, and in no way connected with the testamentary act, cannot be allowed as evidence to impeach a will.   Something more must appear: that undue influence was acquired in consequence of it, and that that influence continued down to the time the will was executed.   In these cases, it is true, a wide range is permitted, as undue influence is seldom susceptible of direct proof, but must be gathered from facts and circumstances.   But the bad treatment alone, when it occurred many years prior to the making of the testament, will not be sufficient.

It appears that the testator was addicted to the excessive use of opium, and that the opinions of medical witnesses were introduced for the purpose of showing the influence it had upon his mind.

This evidence, although objected to, was admitted.   The

opinions of medical men, as men of science and as experts, are admissible in certain cases to show the nature, cause and influence of disease; but when they are called as scientific witnesses they cannot give their opinions as to the merits of the cause, but only their opinions on the facts proved; and where the facts are doubtful the witness may be asked his opinion upon a case hypothetically stated. The deposition of Dr. Barnes in respect to the influence, effect and mental derangement caused by the use of opium, was inadmissible. It was not founded on any hypothetical statement or agreement of facts in the case. It was the opinion of the deponent as to the incapacity of any man who should use opium a certain number of years. It was more in the nature of a medical treatise, general in its statements and manner of discussion, than an opinion of skill and science founded on facts either real or assumed.

A question has been made in regard to receiving the declarations of the testator made before the making of the will, but we do not deem it necessary to go into a discussion of that subject. The general doctrine was thoroughly considered by this court in the case of Gibson v. Gibson, 24 Mo. 227, and we see no reason for reviewing the elaborate decision there rendered.

As these views are decisive of the present disposition to be made of the case, it becomes unimportant to notice the misconduct of the juror and the audience attending upon court at the trial. As the judgment was for the plaintiffs, the result is that the same must be reversed and the cause remanded for a new trial in conformity with this opinion. The other judges concur.