Garland v. Smith.

In Banc, March 19, 1895.

1. **Will**: CONTEST PROCEEDING: JURY: APPELLATE PRACTICE. A proceeding to contest a will is an action at law in which the parties are entitled to a jury, and its verdict will not be disturbed on appeal on the ground that it is against the mere weight of the evidence.

2. **Appellate Practice**: IMPERFECT RECORD. No error can be successfully assigned on a ruling of the court where the record states that "the court sustained the motion in part and overruled it in part," without showing which part was sustained or overruled.

3. **Will Contest**: LEGATEE: EVIDENCE. Statements made by the principal legatee in a will, too remote in point of time to have any material bearing on the instruments in question, are properly excluded.

4. ——: ——: ——. Evidence that the principal legatee speculated "on change" is irrelevant on the issue of undue influence exerted by him.

5. ———: TESTATRIX: EVIDENCE. Declarations by testatrix made several years before the execution of the will in regard to the principal legatee's feelings on the subject of her gifts to charities are incompetent.

6. Practice: EVIDENCE. The order of the introduction of evidence is largely within the discretion of the trial court.

7. Will Contest: EVIDENCE. Conditional threats made by the proponent against the life of one of the contestants, but not in the presence of the testatrix, *held* inadmissible.

*Appeal from St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

AFFIRMED.

*Hiram J. Grover* and *Lee, McKeighan & Priest* and *Jos. S. Laurie,* with whom is *H. Crea,* for appellants.

(1). Fraud and undue influence are distinct matters. 1 Bigelow on Fraud, p. 571; Beach on Wills, sec. 107; *Davis v. Calvert,* 5 Gill & John. 269; *Stewart v. Elliott,* 2 Mackay, 307; *Terry v. Buffington,* 11 Ga. 337; *In re Hesse's will,* 31 Am. St. Rep. 665; *Smith v. Dubois,* 78 Ga. 413; *Greenwood v. Cline,* 7 Ore. 17; *Dietrick v. Dietrick,* 5 Serg. & R. 323. (2) A will, the offspring of deception, can not stand any more than the offspring of constraint. Schouler on Wills, sec. 230; Kerr on Fraud, 299; *Tyler v. Gardner,* 35 N. Y. 559; *Milton Budlong's will,* 126 N. Y. 423; *Davis v. Dean,* 66 Wis. 100; *Greenwood v. Cline,* 7 Ore. 17; *Davis v. Calvert,* 5 Gill & John. 269; *Beaubean v. Cicotte,* 12 Mich. 461; *Haynes v. Hayden,* 95 Mich. 332; *Porter v. Throop,* 47 Mich. 313. (3) Where a fiduciary relation exists between a donor and the beneficiary, a presumption arises that undue influence has been acquired and exercised; such presumption being, however, one of fact, and may be rebutted and overcome. This rule obtains both as to deeds and wills. The decisions in

this state, upon this subject, and to that effect, are familiar to the court and need only to be cited. *Garvin v. Williams*, 44 Mo. 465; s. c., 46 Mo. 206; *Harvey v. Sullens*, 46 Mo. 147; s. c., 56 Mo. 372; *Street v. Goss*, 62 Mo. 226; *Ford v. Hennessy*, 70 Mo. 580; *Mueller v. St. Louis Hospital Ass'n*, 73 Mo. 242; *Bridwell v. Swank*, 84 Mo. 455; *Gay v. Gillilan*, 92 Mo. 250; *Carl v. Gabel*, 120 Mo. 283. The finding of the trial court n a will contest is not conclusive on the supreme court. *Kaare v. Co.*, 19 N. Y. 789; see *Hamilton v. Armstrong*, 120 Mo. 597; *Whitelaw v. Simms*, 19 S. E. Rep. 113; *Chappel v. Trent*, 19 S. E. Rep. 314; *Trezevant v. Raines*, 19 S. W. Rep. 577; *State v. Primm*, 98 Mo. 368.

*Judson & Taussig* for respondents.

(1) A will contest, so far as the review on appeal is concerned, is an action at law, and the finding of facts will not be reviewed. *Eddy v. Park*, 31 Mo. 513; *Harris v. Hayes*, 53 Mo. 90; *Young v. Ridenbaugh*, 67 Mo. 574; *Appleby v. Brock*, 76 Mo. 314. (2) This cause was tried below on contestant's own theory of the law. If any error was committed, it was in favor of appellants and against respondents, in the declarations of law given on both issues. *First.* Instruction number 8, in form on the issue of undue influence. *Carl v. Goebel*, 25 S. W. Rep. 214. And also in requiring "clear and convincing proof" to repel the alleged presumption. *Gay v. Gillilan*, 92 Mo. 258. *Second.* Instruction number 3, in applying an erroneous test of a disposing mind. *Couch v. Gentry*, 113 Mo. 248. *Third.* None of the instructions were warranted by the testimony. (3) There is no merit in the specific assignments of error, as to rulings of trial court. In fact the record is notable in the extraordinary and unprecedented range permitted to contestants in intro-

ducing remote and irrelevant testimony. *Ketchum v. Stearns*, 8 Mo. App. 70; 76 Mo. 396; *McFaddin v. Catron*, 25 S. W. Rep. 506. (4) The contention of appellants in this case is nothing but an attempt to reopen the finding on the facts of the circuit court rendered on their own theory of the law. (See authorities, *supra*, 1.)

DIVISION TWO.

GANTT, P. J.—This is a statutory proceeding to determine whether the instrument propounded as the last will and testament of Mrs. Persis Smith, of date October 15, 1890, was in truth and in fact her last will. The cause was tried before Judge VALLIANT, both parties waiving a jury.

Mrs. Persis Smith, the testatrix, was the widow of James Smith. She and her husband were old residents of St. Louis. They had no children but had amassed a large estate. In 1838, James Smith received into his family a destitute, homeless boy named George Connelly, who was then about five years old. The boy was ever afterward, and now is, known in these pleadings as George Smith. He was reared and educated as their own child, and finally graduated at Harvard University. George Smith, when a young man, went to New Mexico, but returned to St. Louis about 1860. He acquired habits of intemperance, and became largely indebted in St. Louis and left St. Louis in 1865 for New York. From that time until the death of James Smith, in 1877, no communication passed between George Smith and his foster parents. Indeed, the record discloses that he himself regarded his treatment of James Smith as the basest ingratitude.

James Smith, by his last will, gave one half of his property to Dr. Wm. G. Eliot, the chancellor of Washington university. The other half he conveyed by trust

instrument to James S. Garland, a nephew of his wife, in trust for his wife, Persis Smith, giving her the right to dispose of it by her last will. At the time of James Smith's death, his wife was sixty-seven years old.

Mrs. Persis Smith was a charitable woman and was lavish in her gifts to her relatives and to charitable and religious institutions. She executed several wills and trust deeds providing for her relatives, in none of which did she make any mention of George Smith, prior to 1882. In July, 1880, George Smith, being in extreme poverty in New York, appealed to two of his former friends in St. Louis for aid. These appeals were communicated to Mrs. Smith, who insisted on furnishing the necessary assistance herself, and on the twenty-seventh day of July, 1880, began a correspondence with George Smith, which culminated in his coming to St. Louis, and resulted in Mrs. Smith changing her former disposition of her property and granting and devising the great bulk of her estate to George Smith. She became alienated from her nephew, Mr. James S. Garland, her trustee, and refused to see him. She had lost largely by the failure of the Provident Bank and the Belcher Sugar Refinery, and she attributed these losses to Mr. James S. Garland, as the record shows, most unjustly.

Mr. Garland became an invalid, and Mrs. Smith had her attorney procure from him a deed relinquishing his trusteeship while he was in an asylum for treatment. When Mr. Garland learned his aunt, to whom he was devoted, had became embittered against him, he brought a suit to set aside this relinquishment of his trust, and thereupon Mrs. Smith consulted counsel and executed the will contested in this action.

The grounds for assailing the will are, briefly, want of mental capacity to execute a will by reason of great age and diseased condition of her mind and body;

that it was obtained by means of fraud, deception and imposition practiced 'upon her by George Smith; third, undue influence of George Smith.

Persis Smith had three brothers, Charles Garland, Benjamin F. Garland and John P. Garland, only one of whom, John P. Garland, survived her at her death, February 14, 1891. Charles Garland died in 1880, leaving four children, James S. Garland, John T. Garland, Nathan M. Garland and Jennie G. Hosmer, wife of James K. Hosmer. These last named four are the original plaintiffs in this suit. The defendants were John P. Garland and Mrs. Dale and Mrs. Wisher, the daughters of the deceased brother Benjamin F. Garland, and three children of John P. Garland, legatees in the will, Amelia Mantels, an old and faithful servant, also a legatee, and George Smith. The defendants John P. Garland, his wife Elizabeth and his daughters, Persis Jane Garland, Elizabeth Garland, and his son James, and Mrs. Wisher, and Mrs. Dale filed answers admitting all the allegations in the petition and joined in contesting the will, but have not appealed. Defendants Amelia Mantels and George Smith, by separate answers, denied all the allegations in the petition, and in addition thereto George Smith averred that he was the adopted son of Persis Smith, and therefore plaintiffs were not the heirs at law and would not inherit even if Mrs. Smith died intestate.

After a trial consuming four weeks of time, the court gave the following declarations of law:

"1. If the court, sitting as a jury, believes from the evidence, that on the fifteenth day of October, 1890, Persis Smith was erroneously of the opinion that she was financially ruined, or that her estate was greatly reduced, and that she had very little property left; or, if the court, sitting as a jury, believes from the evidence that said Persis Smith on the fifteenth of

October, 1890, had no definite or accurate knowledge of the amount or value of her property, and, by reason of said want of knowledge, executed on that day the instrument purporting to be her last will and testament; or, if the court, sitting as a jury, believes from the evidence that at said time said Persis Smith was in such a bodily and mental condition as not fully to understand and comprehend with reasonable certainty the state and condition of her property, and the true state and condition of her nearest kin and heirs-at-law, any and all of these facts may be considered by the court as indicative of her mental condition, and from them it may be inferred that said Persis Smith was not of sound and disposing mind on said day.

"2.  If the court, sitting as a jury, believes from the evidence that at the time Persis Smith signed the paper purporting to be the will, she was possessed with a false, exaggerated opinion and estimate of the value of the property she had previously settled upon her nearest kin, any or all of them, parties plaintiffs and defendants in this case; and was also laboring under a false and mistaken opinion of the nature and character of such settlement, and of the estates thereby created and vested in them; and if it also find that at the same time she was possessed of a false and exaggerated opinion and belief of the smallness of the amount and value of the property which she then possessed, and of the large extent of the losses she had sustained from the failure of the Provident Bank, and of the ruinous effects of such losses upon her estate, which false opinion and belief she was incapable of divesting herself of, but acted on them in executing the said instrument, as being true; and that these false opinions solely determined the disposition of her property contained in said instrument, then the court ought to find that said instrument was signed by her under a delusion and a mistake;

and that it is not the last will and testament of the said
Persis Smith.

"3.    The court, sitting as jury, ought to find that
the instrument probated as the last will and testament
of Persis Smith, in evidence in this case, was not the
last will and testament of said Persis Smith, unless it
finds from the evidence, that at the time the same was
executed, she was possessed of sound and disposing
mind and memory. A sound and disposing mind and
memory is one which is capable of recollecting and pre-
senting to the testator all her property, its amount,
condition and situation, and of estimating it and di-
viding it out; and of comprehending the scope and
bearing of the provisions of her will; and also of dis-
cussing and feeling the relations, connection and obli-
gations of family and blood; and of recollecting all the
persons who come reasonably within the range of her
bounty; and also all she had previously done for any
and each of them; also the number, condition and cir-
cumstance of those who are the proper objects of her
bounty; and also of weighing their deserts with respect
to conduct, capacity and need, remembering all and
forgetting none.

"4.    The court, sitting as a jury, ought to find
that the instrument purported as the last will and testa-
ment of Persis Smith and in evidence in this case, was
not the last will and testament of said Persis Smith, unless
it finds from the evidence that at the time the same was
executed she was of sound and disposing mind and
memory. A sound and disposing mind and memory is
one which is capable of understanding the nature of
the business and the elements of the will which she is
executing, that is, the nature, extent and situation of
her property, and the mode of distribution, and the
number, names, conditions and circumstances of all

those who come reasonably within the range of her bounty.

"5. If the court, sitting as a jury, believes from the evidence that the mind of deceased Persis Smith, either from sickness, disease, age, bodily and mental decay and overweening confidence, was subject to the domination and control of the defendant, George Smith, and that he exercised such power and influence over her mind and will in the disposition of her property by such will as to destroy her liberty and agency, and to cause such disposition of her property to be made by such will as to suit the purpose and wishes of the defendant George Smith, and not her own, then such will, in law, is not the will of said Persis Smith, and the court will find the issue submitted to it for the plaintiffs and against such will.

"6. The court declares the law to be that if the will in question was the result of undue influence, exercised by George Smith over the mind and will of Persis Smith, that alone is sufficient to impeach and set aside said will. And if the court, sitting as a jury, finds from the evidence, when taken as a whole, that the paper propounded as the will of Persis Smith would not have been made and signed by her but for the undue influence exercised over her mind and will by George Smith at the time, then the court should find that it was procured from said Persis Smith by the undue influence of said George Smith and was not her last will and testament.

"7. The court declares the law to be that, although the court may believe from the evidence that the testatrix, Persis Smith, had great love and affection for the defendant, George Smith, yet if the court believes from the evidence that the influence of said George Smith on, and over, said deceased, arising from such love and affection, was not fairly and reasonably exer-

cised by him, at the time of the making of said will, but was accompanied by misrepresentation, imposition, fraud and deception on the part of George Smith, used toward said deceased with respect to what she had previously given to her next kin; and with respect to what her losses had been and the cause of such losses; and with respect to the condition and amount of her estate, or with respect to what the value of said defendant's services had been, in saving what was left to the estate of the deceased; and that the free agency and will power of the testatrix was by such means overreached to such an extent, that by said will she left to said George Smith a much greater portion of her estate than she would have left, if said fraud and deceit had not been employed, then the court should find that the will in controversy was not the will of deceased Persis Smith.

"8.   If the court, sitting as a jury, believes from the evidence that George Smith is the principal devisee under the will in question, and as such by its terms, if valid, is to receive the great bulk of the property and estate of Persis Smith, and that at the time it was made, to wit, on the fifteenth day of October, 1890, and for a long time previous thereto, said George Smith was, and had been, her trustee, and that in such relation, and as such trustee, he had the legal title to, and was in actual possession of, all her corporate stock, bonds, choses in action, and of all the contents, furniture, beds and bedding, and all other personal property in the residence, 1615 Olive street, and claimed to be the owner of the said house in which she lived, being the roof which covered her head, under a deed of gift executed by her to him in the year 1888, and that as such trustee he collected all revenues and income arising from her estate in his hands as such trustee, and that, at the time of making said will, he had a power of

attorney, authorizing him to draw from bank all money she had therein, and that on such day, and for a long time prior thereto, said George Smith had the management in whole, or in part with her, of all her property and estate, existing in law or in equity, and was her trusted agent and confidential advisor, in all personal and financial affairs, and resided in the said house with her, and that no other persons besides hired servants resided therein with them, and that said George Smith was in constant daily intercourse and companionship with her; and that by reason of her great age and feebleness and infirmity of mind and body, George Smith was practically the guardian of said Persis Smith, then the court declares the law to be that George Smith, at such time, occupied and held a fiduciary relation toward Persis Smith, and that out of that relation, in view of the provisions of said will, the following inference and presumption of fact arises, without further evidence, to wit: That the execution of said will was obtained from said Persis Smith, by said George Smith, by and through the means of the exercise of undue influence by him over the mind and will of said Persis Smith, operating at the time of the execution thereof, and that the said instrument, purporting to be the last will and testament of said Persis Smith, is the will of George Smith and not the will of Persis Smith.

"And the court further declares the law to be that while such presumption and influence of fact arises from the mere existence of a fiduciary relation between said parties, such influence and presumption may be removed and rebutted by evidence; but the burden lies upon the defendant George Smith, by convincing proof and clear evidence, to show that the making of said will was free from all restraint, undue influence,

unfair dealing, imposition, misrepresentation, deceit or harassing or persecuting importunities on his part; and if said George Smith fails so to rebut and remove said inference or presumption of undue influence, arising out of such fiduciary relation, then said inference and presumption will stand, and the court will declare said will to be null and void.

"9. If the court, sitting as a jury, finds from the evidence that the fiduciary relation of trustee and *cestui que trust* existed between George Smith and Persis Smith at the time of the execution of the will in question, and that the said parties were so situated with reference to each other that undue influence could have been used and exercised over the mind and will of Persis Smith by the said George Smith, then the law presumes that undue influence was used and exercised by George Smith over Persis Smith, and he must rebut that presumption by competent and convincing proof. And if he does not so rebut said presumption, then the court will declare said will null and void.

"10. And if the court, sitting as a jury, finds that the fiduciary relation existed between George Smith and Persis Smith, as set forth in the preceding instruction, then the court further declares the law to be, that while the fact that George Smith may not have been in the room, or even in the house when said will was executed, and the fact that said will was drafted by an attorney, E. W. Pattison, upon statement made to him or upon memoranda handed to him by Persis Smith, are facts which may be considered, yet such facts alone are inference of the exercise of undue influence at the time, by George Smith over Persis Smith arising out of the fiduciary relation existing between them."

The court then made its verdict and finding against the contestants and rendered a judgment that the paper

writing was the last will and testament of Persis Smith deceased.

At the threshold it is essential to know what is before this court for its decision. The contestants assign as errors of the circuit court its failure to find the facts in their favor. The court gave all their instructions but rendered judgment against them. In other words the ground for new trial is, that the verdict is against the weight of evidence.

The learned counsel for the appellants in their most exhaustive brief have discussed the facts in the assumption that we will weigh them anew and render our judgment upon them as they appear to us, irrespective of the finding and verdict in the circuit court. They say: "This court has always treated a will contest waged on these lines, that is, 'for alleged fraud and undue influence in the procurement of the will,' as a chancery suit, although under the statute it is an action at law. In such cases, this court has always reviewed the facts and we now present them in detail."

Now, it is nowhere asserted by contestants that there was no evidence rebutting the charge of fraud and undue influence, nor that there was not evidence tending to prove that Persis Smith had sufficient mental capacity to execute a will, but it is sought to have this court review that evidence and render its own judgment upon its weight. It is highly important to determine this preliminary proposition and ascertain if this has been the practice of this court heretofore.

In *Harris v. Hays*, 53 Mo. 90, NAPTON, J., speaking for the court, said: "The trial being one in which a jury was required, or at least permitted (*Lyne v. Marcey* [*Marcus*], 1 Mo. 227; *Swann* [*Swain*] *v. Gilbert*, 3 Mo. 187), and a jury having been waived, the finding of the court on the evidence must be treated here as the verdict of a jury."

In *Young v. Ridenbaugh*, 67 Mo. 574, *loc. cit.* 589, HENRY, J., for the court, said: "This court will not reverse a judgment in a proceeding under the statute to set aside a will, because the jury found the issues against the weight of evidence. In *Lyne v. Marcus, Guardian*, 1 Mo. 410, it was held that a proceeding under the statute to set aside a will is a proceeding at law. So in *Trotters v. Winchester, Id.*, 414, and *Swain v. Gilbert*, 3 Mo. 347."

And again in *Appleby v. Brock*, 76 Mo. 314, this court, through HOUGH, J., says: "It has been several times decided by this court that proceedings under the statute to contest the validity of a will are proceedings at law." (Citing all the foregoing cases.)    *    *    * "As no exceptions were taken to the admission or rejection of testimony, and no instructions were given or refused in the case before us, the only question left for our consideration is whether there is any testimony to support the finding.    *    *    * Although from the testimony in this record we might have reached a different conclusion from that arrived at by the circuit court, *yet, as we can not pass upon the weight of evidence, the judgment must be affirmed.*" See, also, *McIlwrath v. Hollander*, 73 Mo. 105.

It is entirely true that on more than one occasion this court has said "that although this is a proceeding at law yet in many respects it partakes of the nature of a proceeding in equity." *Lilly v. Tobbein*, 103 Mo. 477. Thus it was held in *Eddie v. Parke's Ex'r*, 31 Mo. 513, that the rule in chancery requiring all parties materially interested to be made parties to a bill, obtained in a proceeding to contest a will, and a demurrer on the ground that the devisees were not made parties to the suit was sustained. And in *Gay v. Gillilan*, 92 Mo. 250, this court, through SHERWOOD, J., said: "Courts of law, when called upon for redress in such cases, give

it on precisely the same principle that guides courts of equity in analogous cases." That is to say, that this court held, upon a question of undue influence, that in instructing the jury it was the duty of the trial court to ingraft the equitable principle in its instruction, "that whenever the mind of one person is reduced to a state of vassalage to that of another, and a gift is shown to have been made by the weaker party to the stronger, then the burden of proof will be shifted; the gift will become presumptively void, and the *onus* of upholding its fairness and validity will rest upon the shoulders of the recipient of the gift." But that case is not authority for the present contention, because the cause was reversed for error in the instruction; but it was not intimated that this court, having the facts before it, as in a chancery case, would proceed to decide it. This rule has recently been reaffirmed in *Carl v. Gabel*, 120 Mo. 283.

It thus appears that from the first volume of our reports up to and including the last the proceeding to contest a will is an action at law in which the parties are entitled to a jury and their verdict will not be disturbed in this court on the mere weight of the evidence any more than in any other action at law. This court has in many cases discussed the evidence in order to determine the propriety or impropriety of instructions, but has never assumed the right to decide the case here on a preponderance of the evidence, a matter within the province of a jury or court sitting as a jury. It follows that we can only consider this evidence for the purpose of determining whether there was any substantial evidence to sustain Mrs. Smith's will and of this there can be no doubt.

The instructions embody all the equitable principles invoked by counsel to set aside Mrs. Smith's will. Indeed the third instruction was condemned by this

court in *Couch v. Gentry*, 113 Mo. 248, and instruction number 8 is open to the criticism that it exacted of George Smith a greater burden to remove the presumption against him than is required by the law. *Gay v. Gillilan*, 92 Mo. 250.

We are brought, then, to an examination of the specific assignments as to the exclusion of evidence.

II. As to the action of the court in ruling on the motion of contestants to make absolute the alternative order requiring George Smith to permit them to inspect certain letters, it is impossible to predicate error, because the record simply recites, "the court sustained the motion in part and overruled it in part." What portion was sustained, and what denied, no one can tell. Error must be made apparent to justify a reversal.

III. The conversation of George Smith with Mr. Carlos Greeley in 1877, three years before his reconciliation with Persis Smith, was entirely too remote to have any material bearing on instruments executed thirteen years after the alleged conversation.

IV. Nor do we think it would have aided a court or jury to determine whether George Smith exercised an undue influence over Mrs. Smith to have shown that he speculated "on 'change" or in "bucket shops." It has nothing to do with the controversy here.

V. The exception to the court's action in excluding certain declarations of Mrs. Smith, offered to show George Smith's feelings on the subject of giving to charities, can not be sustained. It was incompetent. *McFadin v. Catron*, 120 Mo. 252.

VI. The ruling of the court as to the order in which counsel could read certain depositions will not be disturbed. We have so often ruled that this is largely a matter of discretion in the trial court that it is unnecessary to say more on the point.

VII.   Mrs. Smith's household expenses were irrelevant.   They threw no light upon this contest.

VIII.   The conditional threats of George Smith that if James Garland attempted to go into any part of Mrs. Smith's house, except the room in which the depositions were being taken, he would shoot him down like a dog, made, as it was, out of the presence and hearing of Persis Smith, were irrelevant.   Its tendency could only have been to show the extreme bitterness that had been engendered between these two men after Mr. Garland had brought his suit to restore his position as trustee.

It follows then that, as this is an appeal from a judgment at law, and there was evidence to sustain the finding of the circuit court, and no exceptions were preserved to its declarations of law, its judgment must be, and is, affirmed, with the concurrence of the other members of the court.

### IN BANC.

PER CURIAM.—The foregoing opinion of GANTT, J., in division number 2, as modified, is adopted as the opinion of the court *in banc*.   In accordance therewith, the judgment of the circuit court is affirmed, all the judges concurring.