## SCHAFF et al., Respondents, v. PETERS et al., Appellants.

St. Louis Court of Appeals, March 12, 1905.

1. **WILLS: Res Judicata.** Under section 4622, Revised Statutes of 1899, the rejection of a will by the probate court is not conclusive as to its validity until after five years, and does not within that time, bar a proceeding in the circuit court to establish such will.

2. ———: **Question for Jury.** In a proceeding to establish a will under section 4622, Revised Statutes 1899, the issue of will or no will was properly submitted to the jury.

3. ———: **Revocation.** One who has made a will may revoke the same by burning, provided at the time he has sufficient mental capacity to comprehend the nature of the act and the effect it would have upon the devolution of his estate.

4. ———: **Proving Lost Instrument.** The written instrument executed by a testator as his last will is but the evidence of his last wish and, if it should be destroyed, a copy, sufficiently proven, takes the place of the lost instrument as evidence of his will for all practical purposes.

Appeal from Clark Circuit Court.—

AFFIRMED.

*Berkheimer & Dawson* for appellants.

(1) A will is revoked by burning, tearing or otherwise destroying the same by the testator, or by some person in his presence by his direction, with the intention of revoking the same. 2 Jarman on Wills, secs. 114 and 115.

(2) He who seeks to establish a lost or destroyed will, assumes to overcome the presumption that it was destroyed by the testator by adequate proof. He must show by facts and circumstances that the will was actually fraudulently destroyed. Collyer v. Collyer, 110 N. Y. 481; 6 Am. St. Rep. 405; Bells v. Jackson, 6 Wend. 173; Knapp v. Knapp, 10 N. Y. 276; Schultz v. Schultz, 91 Am. Dec. 88; Hatch v. Sigman, 1 Demarest, 519. (3) To constitute undue influence there must be an influence exerted *mala fide to* produce a result, which the party as a reasonable person was bound to know, was unreasonable, and it must have the effect of producing illusion or confusion, in the mind of the testator so as to overcome either his free agency or his power of judging upon the true relations between himself and those who might be supposed to have just claims upon his bounty. Carl v. Gabel, 120 Mo. 283, 25 S. W. 214; Elliot v. Welby, 13 Mo. App. 19; Jackson v. Hardin, 83 Mo. 175. (4) The fact that the testator was an old man and in feeble condition of body and mind is not sufficient to justify an inference of want of testamentary capacity. In re Dixons Will, 50 N. Y. sec. 421; 42 App. Div. 481; Stephenson v. Kinsley, 8 Pa. Dist. R. 245; 20 Wash. 563. (5) A man by his own act burns up his own will intended to destroy and revoke that will, the act within itself conclusively shows that. There was no evidence of incapacity. No evidence that he did not know the result of the act. Riley v. Sherwood, 45 S. W. 1077; In re Cornelius Will, 51 N. Y. S. 877, 23 Misc. 434; In re Metcalfs Will, 38 N. Y. S. 1131, 16 Misc. Rep. 180; Hall v. Perry, 33 A. P, 160; Cheny v. Price, 37 N. Y. S. 117, 90 Hun 238; In re Pikes Will, 31 N. Y. S. 689; In re Lewis Will, 30 N. Y. S. 675, 81 Hun 213. The will was revoked by Joseph Peters, *animo revocandi.* Hard v. Ashley, 34 N. Y. S. 583, 88 Hun 103; In re Brookman, 33 N. Y. S. 575, 11 Misc. Rept. 675; Townsend v. Townsend, 29 A. 1077, 86 Me. 285. Revocation of a will by burning has always

been recognized by the books as valid, even without witnesses to such burning, and if the statute law of the State.

(6) Plaintiffs by their petition admit the judgment of the probate court of Clark county, Missouri, on the 27th day of February, 1896, rejecting the probate of said will, which is conclusive upon the plaintiffs. The rejection of said will to probate by the probate court of Clark county, Missouri, is *res judicata* against this plaintiff. Banks v. Banks, 65 Mo. 432. (7) The principle of *res judicata* enforces not only what was actually determined in the former case but also extends to all other matters properly involved and which might have been raised and determined in it. Terre Haute & I. R. Co. v. Railroad, 81 Ill. App. 435; Bridges v. McAllister, 51 S. W. 603; Kendall v. Hendenbergh, 94 T. 911; Park Hill Co. v. Harriot, 58 N. Y. S. 552, 41 Mo. App. Div. 324.

*T. L. & S. J. Montgomery* and *O. S. Callihan* for respondents.

(1) Whether a will is destroyed before or after the death of the testator, if destroyed without his knowledge or consent, it does not cease to be his will, and its contents may be established by competent proof. Dickey v. Malechi, 6 Mo. 177.

(2) The statutory proceeding to establish or contest a will, is a proceeding at law, and the parties are entitled to a jury. Tingley v. Cowgill, 48 Mo. 291; Young v. Ridenbaugh, 67 Mo. 574; Bush v. Bush, 87 Mo. 480.

(3) The question of will or no will, is one for the jury, under proper instructions from the court; and where the law of the case is declared with substantial

accuracy, the verdict of the jury will not be disturbed by an appeddate court. Muller v. Hospital Ass'n, 5 Mo. App. 390; Affirmed, 73 Mo. 242.

(4) The proceeding under the statute to establish a will, is one at law, and the appellate court will not review the evidence to determine its weight. Lutton v. Graves, 26 Mo. 250; Appelby v. Brock, 76 Mo. 314; Garland v. Smith, 127 Mo. 567, 21 S. W. 191, 29 S. W. 836; Gordon v. Burres, 153 Mo. 233, 54 S. W. 546.

(5) As to the force and effect of a judgment of the probate court, admitting or rejecting the probate of a will, such proceedings are, under the statute only a finality, if no suit is thereafter and within five years brought in the circuit court to contest the validity of a will that has been established, or to establish a will that has been rejected.

The proceeding in the circuit court is purely a statutory one, and stands as a substitute for an appeal from the probate court. Lamb, admr. v. Nelin, admr., 56 Mo. 420; Lapsley v. McPike, 50 Mo. 589; Hugh v. Burriss, 85 Mo. 660; Cash v. Lust, 142 Mo. 630, 44 S. W. 724

STATEMENT.

The suit is to prove and establish a destroyed paper as the last will of Joseph Peters who died in Clark county, Missouri, on January 31, 1896. The paper filed and alleged to be a copy of the will reads as follows:

"In the name of God, amen: I, Joseph Peters of the county of Clark, in the State of Missouri, being of sound mind and disposing memory, do make, publish and declare this my last will and testament in manner following, that is to say:

"First. I give and bequeath to my son John Peters, the sum of one hundred and fifty dollars.

"Second. To my son, Frank Peters, I give and bequeath the sum of one hundred and fifty dollars.

"Third. To my son Joseph Peters, I give and bequeath the sum of five hundred dollars.

"Fourth. To my daughter, Elizabeth Steel, I give and bequeath the sum of twenty dollars.

"Fifth. To my grandson, Joseph Hasle, I give and bequeath the sum of five dollars.

"Sixth. To my grandson, Louis Hasle, I give and bequeath the sum of five dollars.

"Seventh. To my grandson, Henry Hasle, I give and bequeath the sum of five dollars.

"Eighth. To my grandson, Mathew Hasle, I give and bequeath the sum of five dollars.

"Ninth. To my daughter, Anna Schaaf, I give and bequeath all the rest and residue of all my property, both real and personal, whereof I may die possessed.

"In witness whereof I have hereunto set my hand and seal this 25th day of September, 1895.

"JOSEPH .PETERS. (Seal)

"The foregoing instrument, consisting of one sheet, was at the date thereof sealed and declared by the said Joseph Peters as and for his last will and testament in the presence of us, who at his request, and in his presence and in the presence of each other, have subscribed our names as witnesses thereto.

"CHARLES SPANGLER,
"S. P. KIGER."

The allegations of the petition were put at issue by a general denial. On the part of respondents, the evidence is that on September 25, 1895, Samuel Spangler was called on by Joseph Peters, to write and did write his last will, which was read over by Spangler to Peters and was then and there approved and signed by him as and for his last will, and declared to be his last will in the presence of Charles Spangler and S. P. Kiger, who signed the will as witnesses at the request of Peters. That about two weeks prior to his death, Joseph Peters, be-

came very sick while at the house of the respondents, with whom he resided, and was unable from that time until his death to take any nourishment except a little diluted wine; that he was ninety-six years of age and had difficulty in breathing. Two days previous to his death, Doctors Martin and Dicken were called in to see him; these physicians testified that they found him in a morbid, dying condition, suffering from heart trouble; that he had to be propped up in bed to breathe; that his lower extremities were cold and blue and his mind was wandering; that they tried to rouse him up to talk to him but could not do so, he could mumble words, but could not be understood and that he was not in a condition to transact any business, that John Peters and Mrs. Steel, son and daughter of Joseph Peters, visited him on the evening of the same day the physicians were there; that the condition of Joseph Peters did not improve, but grew gradually worse; that on the following day, (the day previous to his death) John and Mrs. Steel raised Joseph Peters up and that John took hold of the old gentleman and shook him and told him that his will would not do, and that he must destroy it or make another one; that the old man called for the will and when it was given to him, he handed it to John and told him to put it in the stove and burn it up and that John put the will in the stove and it was burned up.

On the part of the defendants, the evidence of John and Mrs. Steel is, that neither knew that the old gentleman had made a will, did not know that the paper burned was a will; that their father said to John that he had a paper in his trunk he wanted burned, had the trunk brought to his bedside and made a search of the trunk for the paper, not finding it he had his daughter Anna (Mrs. Schaaf) called and told her to bring him his papers; that she brought in a bundle of papers tied up in a handkerchief; that the bundle was untied and from the bunch of papers the old gentleman picked out the will and handed it to John and told him to stick it in the

stove; that they nor either of them used any influence over the old gentleman to destroy the will, nor to make another one and had never heard that a will had been made until the suit was brought; that the time the paper was destroyed, Joseph Peters was fully conscious of what he was doing and mentally able to understand the consequences of his act in having the will destroyed. Their testimony was somewhat corroborated by expert evidence and some few circumstances testified to by some of the non-expert witnesses.

From memoranda which Sprangler had taken from Joseph Peters, to enable him to prepare the will and from a form he had used in the preparation of the will, he was enabled to reproduce almost, if not an exact copy of it, and he and the witnesses to the will testified that the paper proffered by respondent as a copy, was a copy of the will. On this proof, the paper was admitted in evidence without objections, as a copy of the will of Joseph Peters, which had been burned.

For respondents, the court gave the following instructions:

"No. 1. If you believe that the deceased signed a writing as his will and that the same was signed by Charles B. Spangler and S. P. Kiger, as witnesses, and if you further believe he was of sound and disposing mind when the same was so signed, then this paper would be and become his will and so remain until revoked. It is claimed that said will was burned and destroyed with his derection, it is also claimed that at the time it was burned he was not of sound mind and memory. Now, if you believe same was so burned and destroyed by his direction, and that he was then of sound and disposing mind, this would be, and constitute a revocation of said will, and it would be no longer the will of the deceased. But, if you believe that at the time he so directed said will to be burned and destroyed he was not of sound mind and not capable of understanding and comprehending the act he was doing,

it would not be and constitute a revocation of his will but same would yet be and remain the will of deceased. It is also claimed that the paper produced in evidence is a copy of the will of deceased, so above mentioned, signed and witnessed.

"Now, gentlemen, under the foregoing definition and explanation you will answer the following questions:

"Is the paper signed by deceased as testator and Chales B. Spangler and S. P. Kiger as witnesses, the last will and statement of said Joseph Peters, deceased?

"Is the paper produced in evidence claimed to be a copy of said will, a copy of the same?

"The above questions you will answer yes or no, and sign it by your foreman. Writing underneath each question as follows:

"Yes.......... .............. ...........Foreman or
"No........ ............ ................ Foreman.

"No. 2. If the jury believe from the evidence in the cause that the mind of the deceased, Joseph Peters, either from sickness, disease, age bodily infirmity and mental decay was subject to the dominion or control of John Peters or Elizabeth Steel, or either of them, or that they or either of them, exercised such power or influence over the mind or will of Joseph Peters in the disposition of his property, by causing him to deliver up his said will as to destroy his liberty or free agency and cause such disposition of his property to be made by the destruction of said will as to the purchases or wishes of either or both of them and not his own, then such destruction in law is not the act of said Joseph Peters, and you will find the issues submitted to you for the plaintiff and in favor of said will.

"No. 3. The court instructed the jury that undue influence alone is sufficient, if proven to your satisfaction, to impeach or set aside a will under it, or revive a destroyed will under it; and if you believe from the evi-

dence that the paper destroyed was the last will and test-
ament of said Joseph Peters, and would not have been
destroyed by burning it on the 30th day of January,
1896, but for the influence exercised over the mind and
will of said Joseph Peters by John Peters and Elizabeth
Steel, or either of them, then you should find that the
destruction of said will was produced from the said
Joseph Peters by undue influence, and that said destruc-
tion and burning was not the 'act and deed of the said
Joseph Peters.

"No. 4. The court instructs the jury that undue
influence may be proven by circumstances, and that in
determining whether the defendants, John Peters, and
Elizabeth Steel, or either of them, exercised any undue
influence over the mind of Joseph Peters to induce him
to destroy the will on January 30, 1896, you have the
right to take into consideration all of the facts and cir-
cumstances proven in the cause.

"No. 5. The court instructs the jury that if they
shall believe from the evidence that any influence was
exercised upon the testator, by the defendants, John Pe-
ters and Elizabeth Steel, or either of them, by reason of
which his mind was so embarrassed and controlled in
its operation, that he was not master of his own opinions
and wishes in respect to the destruction of the will, this
was undue influence within the meaning of the law.

"No. 6. Even though the jury may believe from
the evidence that the testator, Joseph Peters, directed
defendant, John Peters, to put the will in the stove, or
that he tacitly assented to said defendant putting it into
the stove where it was burned and destroyed, such direc-
tion or assent constitutes a revocation of said will, unless
you further find and believe from the evidence that he
did not have mind and memory at the time to know what
he was doing and to comprehend to whom his property
would go at his death as the result of the destruction of
said will."

And for the appellants, the following instructions:

"No. 1. The court instructs the jury that law presumed that Joseph Peters, the testator, at the time he produced the will and at the time it was burned by his direction, that he was not insane but was of sound mind and capable of burning, destroying and revoking his will and that said burning, and distruction of the same was his act and deed, and it devolves on the plaintiff to overcome such presumptions by the evidence in the cause.

"No. 2. The court instructs the jury that the mere fact that the said John Peters was the son of the testator and that he did not receive as much under the will as without it, and that he was closeted with his father before the will was burned, is not sufficient of itself to authorize the jury to find that said John Peters by undue influence induced the said testator to burn and destroy his will, but the jury must further find that the said John Peters by over persuasion, coercion or force or other wrongful means, destroyed the free agency or will power of said Joseph Peters to such an extent that said Joseph Peters at the time the will was burnt and destroyed, and that such was not the act and deed of said Joseph Peters, but was the act of defendant, John Peters, and unless you so find, your verdict must be for the defendant, and you will by your verdict answer interrogatories in the negative.

"No. 3. The court further instructs the jury that before they can find that Joseph Peters told John Peters to burn and destroy his will by reason of undue influence over the mind of said Peters devolves upon the plaintiff to show by fair preponderance of the evidence in the cause that the said influence was wrongful and to such a degree, which at the time of such destruction, caused the said Joseph Peters to do that which he would not otherwise do and that it was such an influence over the mind of the said Joseph Peters that it substituted the intention and mind of said Joseph Peters for that of said defendant John Peters, and unless you so find, your answer to the interrogatory must be in the negative.

"No. 4. Although the jury shall believe from the evidence in the cause that said Joseph Peters was old and infirm and was sick and that he died and that at times he was unconsious, and that his mind was weak from sickness, old age and disease and that he took no nourishment for five days before he died, yet, if the jury shall believe from the evdience that at the time the will was burned by the defendant at his directions, or if said Joseph Peters said to burn the same, he had sufficient mind and memory at the time to know and understand the nature of the said act, and that said will was destroyed by said act, then the jury are instructed that they will find for the defendant and answer the interrogatory submitted to them in the negative.

"No. 5. If the jury shall believe from the evidence in the case that Joseph Peters did burn and destroy the will, theretofore made by him, and that said Joseph Peters told him, the defendant, to burn and destroy the same, and that said Joseph Peters at the time of such burning had mind and memory enough to know what he was doing and comprehend the nature of the act, then the paper purporting to be the last will and testament in evidence was not the will of said Joseph Peters and in such case the jury are instructed to answer the interrogatory as to whether said paper was his will, 'No.'

"No. 6. The court instructs the jury that before they can find for the plaintiff and answer the first interrogatory, 'Yes,' it devolves on the plaintiff to show at the time the will was burned that Joseph Peters had not mind and memory enough to know or understand what he was doing or the nature of the act.

"No. 7. The court further instructs the jury that in passing upon the issues presented in this case, you will not take into consideration any conversations testtified to by witnesses of the plaintiff, as to conversations between them and the said Joseph Peters, in the absence of the defendant and not in his hearing."

The jury returned the following verdict:

"Is the paper signed by the deceased, as testator, and Charles B. Spangler and S. P. Kiger, as witnesses, the last will and testament of said Joseph Peters, deceased?

"Yes .... .... ....J. T. FAIRBROTHER, Foreman."

"Is the paper produced in evidence, claimed to be a copy of said will a copy of the same?

"Yes ..... ........J. T. FAIRBROTHER, Foreman."

After unavailing motions for new trial and in arrest the appeal was taken.

BLAND, P. J.   (after stating the facts).—The paper was presented first to the probate court for reception and probate as the last will of Joseph Peters. The probate court found that it was not the last will of Peters and refused to probate it.   The appellants contend that this judgment is a finality and conclusive against the respondents, who did not appeal therefrom.   But for the statute, Sec. 4622, R. S. 1899, the position of appellants would be unanswerable, but by reason of the statute, the probate or rejection of a will by the probate court is not a finality until after five years, which is allowed to any party interested in the probate of a will to appear by petition in the circuit court to establish or contest it, after the probate court has taken action.   The effect of the proceedings in the circuit court under the statute, is the same as if an appeal had been taken from the probate court.   Lamb's Admr. v. Helm Admr., 56 Mo. l. c. 432.   And the proceedings are in effect transferred from the probate court to the circuit court.   Benoist v. Murris, 48 Mo. 48; Tinzley v. Cowgill, 48 Mo. 291.

## II.

It is assigned as error that the court submitted the issues to a jury.   This contention is answered by the above section, which provides that issue of will or not will shall be submitted to a jury or the court sitting as

a jury, and it has been uniformily held that the proceedings to establish a will under this statute is one at law. Letton v. Graves, 26 Mo. 250; Tinsley v. Cowgill, supra; Young v. Ridenbaugh, 67 Mo. 574; Bush v. Bush, 87 Mo. 486; Muller v. Hospital, 73 Mo. 242; Garland v. Smith, 127 Mo. 567, 28 S. W. 191, 29 S. W. 836.

## III.

The issue that was contested on the trial and the one to which the instructions were chiefly directed, and the only one on which there is any substantial conflict in the evidence was whether or not Joseph Peters had revoked his will, by having it burned. This mode of revocation is expressly recognized by sec. 4605, R. S. 1899, and if at the time the burning was done, Joseph Peters had sufficient mind and memory to comprehend the nature of the act, and the effect it would have on the devolution of his estate, the revocation was effectual. The law requires the same mental capacity to revoke as it requires to make a will. The condition of Joseph Peter's mind at the time the will was burned was the paramount and controlling fact in the case. How they should find this fact under the evidence, the jury were given instructions, in which no error is pointed out by appellants. The verdict is against the contention of appellants that Joseph Peters was of disposing mind when the will was burned. The evidence of the two physicians who saw him the previous evening is that he was then dying and in an unconscious condition. Their evidence is strengthened by the fact that he did die within twenty-four hours after the will was burned. The verdict to our minds is supported by the great weight of evidence. For it is hardly conceivable that a man of ninety-six years of age in the throes of death from blood poisoning (as testified by one of the physicians), could command sufficient mind and memory to make or unmake a will: Be this as it may, we are controlled by the verdict and can not disturb it, even if we felt that way inclined. Chou-

quette v. Railroad Co., 152 Mo. 257, 53 S. W. 897; Tower v. Pauly, 76 Mo. App. 287; Hays v. Merkle, 78 Mo. App. 383; Canaday v. Lillette, 84 Mo. App. 214.

## IV.

From what we gather from appellant's brief, if we understand it correctly, the point is made that the paper writing produced as a copy of the will of Joseph Peters, even after the verdict, could not be established as the will of the testator, that it would yet be only a copy and not the will. All wills must be in writing, but the writing in itself is nothing more than the means used by the testator to evidence his last wish; it is the evidence by which the legatees obtained the substance of things hoped for; If the evidence should be destroyed their hope would have to be abandoned if there was no legal way by which the evidence committed to writing in the form of the will could be reestablished and perpetuated. Like any other written or printed document that has been lost or destroyed, a lost or destroyed will may be restored on proof of its loss or destruction and of its contents, and when restored, as was the will of Joseph Peters, it becomes the written evidence of the will of the testator, and takes the place of the lost instrument and for all practical purposes, stands in its stead and is the will of the testator.

We discover no reversible error in. the record and affirm the judgment. All concur.